STATE *v.* NATHANIEL BLAIR, WILLIAM MILLS AND BEMAN H. CAMPBELL.

*Criminal Law. Arson. Power of Chief Judge of County Court to act when Assistant Judges Disqualified. Married Woman not a Witness for her Husband.*

1. The presiding judge of the County Court, in a criminal cause, has the authority to charge the jury, and to receive their verdict when the assistant judges are legally disqualified from acting, and are absent from the court house.
2. Gen. Sts. c. 30, ss. 22 and 23, as to the constitution of the County Court, construed.
3. Legal disqualification of a judge may originate in physical causes, as well as interest, or relationship.

THIS case was tried at the March Term, 1878; REDFIELD, J., presiding. This was an indictment for the crime of arson. The wife of James Blair, one of the respondents, was offered as a witness in the case, on behalf of the respondents, which was objected to by the State, and excluded by the court, to which respondent excepted. Exceptions allowed, sentence respited, and the case passed to the Supreme Court.

After verdict and before judgment, the respondents moved to set aside the verdict, claiming that they had been tried by no court known to the law, alleging that; 1st, no one of the assistant judges of the County Court was present during the charge of the presiding judge to the jury; 2d, that the presiding judge received the verdict of the jury, when no one of the assistant judges was present, and allowed the jury to come into the court house and hear read the testimony of three witnesses, and then retire, to deliberate again; and 3d, that one of the jurors was not competent to sit in the trial.

State *v.* Blair.

The following is substantially the agreed statement of facts:

Hon. Philander Riford and Hon. W. S. Martin were at the time of the trial the assistant justices of the County Court, and Hon. T. P. Redfield the chief justice.

That P. Riford did not sit at all in the cause, as he was a witness, and that he left town in cars going south at 1:45, P. M., and did not return until Friday of that week of the trial.

That Martin, the other assistant judge, sat in the cause till the charge was about half through, when he left the court house, and at 4:35 took the cars on the Montpelier and Wells River railroad, for his home in Plainfield, and did not return to town until Friday, and that neither of the assistant judges were in town, when the charge was finished, and the jury were sent out. That the jury were out all night and till about 9 A. M. next day, when Judge Redfield was sent for, and he came to the court house, and the jury were called, and Judge Redfield asked them if they were agreed, and they replied in the negative ; and they asked, that the testimony of three witnesses be read to them, and Judge Redfield directed that the reporter read the same, and he did so ; and then Judge Redfield returned them to a further consideration of the case, and, at about noon, they again sent for Judge Redfield, and he came in, and the jury were called, and they returned their verdict as same is recorded ; and the jury, at the request of counsel for respondents, were also polled. During all this time, no other member of the court was in the court house, or in town. That the charge of Judge Redfield commenced at 4 P. M. and concluded at 5 P. M. No objections were made to, and nothing was said about, the absence of the assistant judges by the respondents or their counsel, or by the state's attorney, nor any suggestions made by Judge Redfield about it.

L. L. Durant was, previous to the trial, assigned as counsel for all of the respondents, except William Mills, but he was not present during any part of the charge.

After Judge Redfield had concluded his charge, and before the jury went out the first time, C. H. Heath asked Judge Redfield to further charge upon some point, and he did so, and also was so requested by Frank Plumley, state's attorney, which he did.

After the jury were discharged, but before they left the court room, Judge Redfield was informed by respondents' counsel, that they had some motion which they wished to make in the case, and Judge Redfield replied that they might wait until there was a full court; so no motion was made at that time; but the respondents' counsel filed, at that time a motion to set aside the verdict, which is the one upon which this case is now pending.

The absence from the court house of Judge Martin was not known by Judge Redfield, until he had completed his charge, and until the jury had retired; nor was it known to respondents or their counsel or state's attorney, that he (Martin) had left town until after the jury had retired.

Judge Martin came back Friday. There is no telegraph station between Montpelier and Plainfield, and he lives ¾ mile from Plainfield station; and it is by highway between nine and ten miles from his place to Montpelier. The train arrived at Plainfield at 5 P. M., on time.

PLAINFIELD, July 5, 1878.

FRANK PLUMLEY, Esq., *Dear Sir:—*

A statement of facts in trial of case, State v. Blair and others, is as follows:

I was taken quite unwell the night before the trial closed, with an attack of pleurisy. Got some relief before morning; went into court; stayed during the day, until I left for home on the train at twenty-five minutes past 4 o'clock P. M. Suffered considerable pain during the day, and left the court house for home on account of pain and sickness. I went home; summoned a physician; was quite sick during the night and next day. Judge Redfield commenced his charge to the jury about 4 o'clock P. M. I left the court house at twenty-five minutes past 4 o'clock P. M., and while Judge Redfield was charging the jury.

Very truly,    WILLARD S. MARTIN.

As to the juror, the court found as follows:

As to the declarations of the juror Perry, who was one of the panel which tried and rendered a verdict in this cause, the court find from the testimony of Wood, Coffey, Camp, and the juror Perry, that a conversation was had in the hotel, then kept by said Coffey, between said Coffey and said juror, in presence of several other persons. That Perry regarded that the propriety of the verdict which had been rendered was called in question, and himself impliedly censured; and he became vexed and said, " they were all guilty as dogs, and he always thought so," or, "thought so all the time." Coffey and Wood understood him to mean by his expressions, that he believed them guilty before the trial, and before he heard the evidence, but he had sworn, when empanelled as juror, that he knew nothing of the parties, and had neither formed any opinion of their guilt or innocence. And we do not find, in fact, that he had formed, or expressed, an opinion of the respondents' guilt, before he heard the evidence, though the expressions used in the hotel after the verdict, under some irritation, would fairly indicate that he had formed an opinion of their guilt before he heard the evidence. The court found that the witnesses Coffey and Wood were truthful, and stated the conversation of the juror

truthfully, *as they remembered it ;* but the great difficulty of retaining in the memory, especially in a heated conversation, (as indicated in the testimony of the witness Camp) the exact form of words used, left it uncertain whether any witness was *entirely exact* in that respect.

The several motions of the respondents, and as a matter of law, the written bond or agreed statement of facts, were overruled, to which the respondents excepted. Exceptions allowed, and cause passed to the Supreme Court.

*Frank Plumley*, State's attorney, for the State.

The decisions are uniform, both in England and this country, that the wife in such a case as the one at bar is not a competent witness. *Rex* v. *Socker*, 5 Esp. 107 ; *Rex* v. *Smith*, Moo. C. C. 289 (Carr. Supp. 66) ; *Rex* v. *Gratham*, *Rex* v. *Ast.*, Carr. Supp. 56 ; *People* v. *Bill*, 10 Johns. 95 ; *Commonwealth* v. *Easland*, *et al.* 1 Mass. 15 ; *People* v. *John Colburn and Elizabeth Weir*, 1 Wheeler Crim. Cases, 479. In *State* v. *Jenkins*, 2 Tyl. 384, it was held that one judge may, in the absence of the others, legally impanel the grand jury, appoint their foreman, and give them their charge. In *State* v. *Bryant*, 21 Vt. 479, it was held that one judge may, in the absence of the others, receive the verdict of a jury in a criminal cause. It was all within the power of the respondents to have prevented by objection and delay. That respondents may waive rights by silence, see *State* v. *Rand*, 33 N. H. 216. Here an incompetent grand juror was of the panel, and this fact was known to the respondent before trial ; objection waived. Burglars' tools shown juror, and explanation of use given during recess, in presence of respondent and without objection ; held, waived. *State* v. *Daniels*, 44 N. H. 383. In *State* v. *Hascall*, 6 N. H. 353, juror was drawn more than twenty days before the sitting of the court. No exceptions taken until after verdict ; held, to be waived. *Rollins* v. *Arms*, 2 N. H. 351 ; *Finalty* v. *The State*, 7 Eng. (Ast.) 630. As to the third objection, the incompetency of the juror, Perry, to sit in the cause, the court distinctly find what was, without doubt, true, that the juror had not formed or expressed an opinion prior to the trial. Certainly no less proof will be required, to declare a verdict null for in-

competency of a juror to sit in the cause than would be required to excuse him under challenge, for cause prior to trial. And in such case he must have formed and *expressed* an opinion. See *Boardman* v. *Wood*, 3 Vt. 570; *State* v. *Phair*, 48 Vt. 366.

*Heath & Carleton* and *L. L. Durant*, for respondents.

The motion should have been sustained, because only one judge was present, when the verdict was received, and the charge given. Gen. Sts. c. 30, s. 22; *State* v. *Freeman*, 15 Vt. 722. The statute fixes a quorum of the court. Can less than a quorum do a judicial act? If one judge can do these things, he can perform all the duties of the County Court. *State* v. *Bryant*, 21 Vt. 479. As to the word "quorum," see Bouvier's L. Dic. under "quorum"; Gen. Sts. c. 4, s. 2; Ark. Sts. 313, s. 3; *Ferguson* v. *Crittenden Co.* 1 Eng. R. 479. The power of the court cannot be enlarged by implication. *Thompson* v. *Cox*, 8 Jones L. C. 311; *Cone* v. *Johnson*, 8 Mass. 87; *Montfort* v. *Hall*, 1 Mass. 443.

The opinion of the court was delivered by

ROYCE, J. The only exception now insisted upon, is to the refusal of the court, to set aside the verdict, on account of the absence of the assistant judges, under the circumstances, and for the reasons stated in the agreed statement of facts. Judge Riford (one of said assistant judges) did not sit in the cause on account of his being a witness, and left town before Judge REDFIELD commenced his charge to the jury. Judge Martin (the other assistant judge) sat in the cause until the charge of the presiding judge to the jury was about one-half through, and then left the court house, on account of pain and sickness, and went to his home in Plainfield, about ten miles from Montpelier, and did not return until after the jury had returned their verdict. The County Courts consist of one judge of the Supreme Court and two assistant judges, appointed for the county in which the court is to be held, any two of whom shall be a quorum; c. 30, s. 22, Gen. Sts; and the 23d section of the same chapter provides that one judge of the County Court may try and determine any cause pending in such court, when the other judges are legally disqualified to act on the

trial of such cause.    When Judge Riford left, there was a quorum of the court present, and from what appears, it is evident that the respondents assented to his absenting himself, and to his declining to participate in the trial.    Was Judge Martin so disqualified that the presiding judge had the legal right to go on with the trial, and do what the case shows was done by him after Judge Martin left?  By the enactment of the statute constituting the County Courts, it was intended that all of the judges constituting such courts should be present at its sessions, and participate in its business.    But there was a necessity for making some provision for the trial of causes, in cases where all the judges could not participate in the trial; and to meet such necessity, the provision above recited was made.    The ordinary signification of the expression, *legal disqualification*, is, that it results from some interest in the subject-matter, or from relationship to the parties in interest.    It was the evident intention of the legislature to provide a court that should be legally competent to try causes, when the other members of the court were unable to participate in the trial.    The inability may result from physical causes, as well as from interest, or relationship; and this is the sense in which the expression, *legal disqualification*, as it occurs in the statute, should be construed.  A physical disability is such a disqualification; and unless such a construction is given to the statute, if the assistant judges are disabled by disease, from attending at the sessions of the County Courts, the courts would be obliged to stop, until they were restored to health, or others were appointed or elected.    And when the assistant judge (as was done in this case) remains in court, and participates in the trial, as long as he could be of any service to the respondents, or the State, and just before the trial is concluded, is obliged to leave court, on account of physical disability, the trial must be suspended or commence *de novo*.    What was done by the presiding judge in this case, after the retirement of Judge Martin, pertained to his duty as chief judge, and would have been done in the same way if Judge Martin had been present.    So that upon both grounds, we hold that the exception was not well taken, and that the respondents take nothing by their exceptions.