# STATE v. JERRY BRADLEY.

### October Term, 1894.

*Expert testimony. Evidence. Practice. Verdict of guilty of murder in the second degree no bar to subsequent conviction for murder in first degree. Charge of Court. Refusal of assistant judge to sit no error.*

1.  A physician of fourteen years' practice may give an opinion, as an expert, that a stain upon the knife, with which it was claimed that the homicide was committed, and which he examined soon after the homicide, was a blood stain.

2.  The fact that the witness, in answer to a question calling for his opinion, replied, "we thought," does not render the testimony inadmissible, it not appearing that any other person examined the knife with him.

3.  An altercation between the deceased and respondent, two days before the killing, accompanied by personal violence, was held admissible under the circumstances of this case.

4.  Where testimony is stricken out, at the respondent's request, and no exception is taken upon the trial concerning it, no question is presented to the supreme court.

5.  The remoteness of time at which the respondent threatened to kill the deceased goes to the weight and not to the competency of the testimony.

6.  Inculpatory conversations between the prisoner and another are admissible, although both are at the time under arrest for the commission of the crime.

7.  If a respondent, upon an indictment for murder in the first degree, is convicted of murder in the second degree, and thereupon alleges exceptions, which are sustained, he may be again tried for murder in the first degree.

30

8.  Where the whole charge is referred to in the bill of exceptions, the court will look into those parts not set forth in words in the exceptions for the purpose of ascertaining whether those so set forth are elsewhere qualified or explained.

9.  Where the prisoner and deceased were alone together in a room at the time of the homicide, the jury were properly told that, in determining the degree of murder, they should consider what happened in the room when the deceased was killed, as far as that could be fairly inferred from the sounds and conversation testified to, if they believed that testimony to be true.

10. It is not error if one of the assistant judges refuses to sit during a trial, although he is not disqualified or incapacitated from so doing.

Indictment for murder in the first degree. Plea, not guilty. Trial by jury at the June term, 1892, Bennington County, MUNSON, J., presiding.    Verdict of murder in the second degree.    The respondent excepts.

The respondent was indicted for the murder of one Maggie Shea.   It appeared that the deceased, a married woman, living separate from her husband, had kept house for the respondent, a married man, not living with his wife, for some years before her death.

The homicide occurred on the afternoon of Tuesday, at the house of one Dillworth, where the deceased had gone the evening of the Sunday previous.    The evidence tended to show that at the time of the homicide there were present in the house, Thomas White, Joseph Lyons, John Bolger, and the respondent; that the other three had been there most of the time since Sunday night; that on Monday afternoon, White had gone to the house of the respondent and persuaded him to come to the Dillworth house for the purpose of settling up his differences with the Shea woman, and taking her home; that the respondent had gone to the Dillworth house at that time, and that they had all remained there from then on, drinking heavily; that at the time of the homicide the de-

ceased was lying upon the bed in a bed-room opening out of the room in which were Bolger and the respondent, and that the respondent got up and went into the bedroom where she was. Bolger testified that he heard the respondent talking with her at that time ; heard him ask her whether she was going back to live with him ; heard her refuse to do so ; heard her call him names ; heard him accuse her of sexual intimacy with Dillworth and White, and threaten to murder her, then heard a rustling noise, heard her tell him to get off from her, heard a shriek, followed by a moan and a gasp, after which the respondent called to him that Mag. was dead, and asked him to come in ; that the respondent said soon after coming out from the room, that she died of heart disease, which statement he repeated to several persons at different times after her death, claiming that she had long been troubled with that difficulty.

An autopsy showed that the deceased had apparently met her death from a stab in the left breast which was about one-half inch wide and two inches and a half deep, and which the testimony tended to show might have been inflicted by the knife which was found upon the person of the respondent upon the day of the homicide, after his arrest.

Upon the trial the respondent took the following exceptions to the admission of evidence :

Dr. Nichols testified that he arrived at the Dillworth house some four hours after the death, and made an examination of the deceased. He produced a knife which the testimony tended to show was taken from the respondent that day, after the homicide. There appeared to be upon the blade of the knife a slight discoloration. Upon this subject the following testimony was admitted, subject to the exception of the respondent :

"Q. Did you make such an examination of that knife at that time as to be able to form any opinion as to how that discoloration was caused?

"A.   We did.

" Q.   Doctor ; you can state what your opinion is as to the cause of that discoloration.

"A.   We thought it was stained with blood, and I preserved the knife and kept it from being handled so if the question came up later, and it was necessary to make a more thorough examination, we could do it.   It was not called for and consequently we didn't do it.   I didn't allow the knife to be handled and kept it under lock and key ; that is the facts of the case.

" Q.   Did you think it was stained with blood?

"A.   Yes, sir."

Respondent especially excepted to the form of the answer in stating, " we thought," in the former answer, whereupon the witness said, " I thought it was."

The witness testified that he had been a practicing physician for fourteen years.

The state was allowed to show, subject to the exception of the respondent, that on the Sunday night before the murder the respondent met the deceased and another woman at some distance from the Dillworth house, driving his team ; that thereupon the respondent told the other woman to get out of the wagon, got in himself and endeavored to persuade the deceased to return home with him, whereupon the deceased sprang out of the wagon and started towards Dillworth's ; that the respondent shortly afterwards followed her, presently came up with her, used threatening and insulting language to her, knocked her down, took her by the hair of the head and swung her around, and assaulted her companion.

The state was also permitted to show, subject to the exception of the respondent, that some three years before the homicide the witness had heard the respondent threaten to kill the deceased if she left him and went away with any one else.

Soon after the homicide, the respondent and Bolger were both arrested upon the charge of having been implicated in it.   While under arrest at the Dillworth house, and imme-

diately following, certain conversations took place between them in reference to the affair which tended to inculpate the respondent, and these conversations the state was allowed to show under the exception of the respondent.

The respondent was first tried at the June term of Bennington County Court, 1890, and found guilty of murder in the second degree. Thereupon he alleged exceptions to the supreme court, which were sustained, and the case remanded for a new trial. The plaintiff insisted that upon the present trial he could only be convicted of murder in the second degree, and requested the court to so instruct the jury. This the court declined to do, and instructed the jury that they might find the respondent guilty of murder in the first degree, to which the respondent excepted.

One of the assistant judges had participated as a juror in the previous trial, and for this reason declined to sit upon this trial, to which the respondent excepted.

The exceptions taken by the respondent to the charge of the court appear in the opinion.

*W. B. Sheldon* for the respondent.

The statements of Bolger, in the presence of Bradley, and his replies thereto, were improperly admitted, since both were under arrest for this crime, and there was a strong temptation for each to incriminate the other. *People* v. *M. Quade,* 18 N. E. (N. Y.) 166; *State* v. *Thibeau,* 30 Vt. 105; 1 Greenl. Ev., s. 111; *Bradshaw* v. *Com.,* 10 Bush 576; *State* v. *Oliver,* (La.) 2 So. Rep. 194; *State* v. *Sneed,* 88 Mo. 138; *Greenfield* v. *People,* 85 N. Y. 75; *State* v. *Shuford,* 69 N. C., 486; *Grigby* v. *State,* 23 Tex. App. 477; *Hoyt* v. *State,* 9 Texas App. 571; *Sharp* v. *People,* 107 N. Y. 464.

The former verdict of murder in the second degree was a bar to a conviction in this trial for murder in the first degree,

and the jury should have been so instructed.    3 Greenl. Ev.,
s. 35; Whar. Crim. Law, s. 573 (a); 1 Bish., Crim. Law,
s. 1004 (7th Ed.); *State* v. *Belden*, 33 Wis. 120; s. c.,
Am. Rep. 748; *State* v. *Martin*, 30 Wis. 216; s. c., 11 Am.
Rep. 567; *State* v. *Smith*, 53 Mo. 139; *State* v. *Ross*, 29
Mo. 32; 1 Bish. Crim. Law, (4th Ed.) s. 849; Cooley's
Con. Lim. 328; *State* v. *Kittle*, 2 Tyler, 471; *Campbell*
v. *State*, 9 Yerg. 334; *Esmond* v. *State*, 1 Swan. 14; *Jor-
dan* v. *State*, 22 Ga. 546, 557; *State* v. *Tweedy*, 11 Iowa
352; *Morris* v. *State*, 8 S. & M. 762; *Hurt* v. *State*, 25
Miss. 378; *Brenon* v. *The People*, 15 Ill. 511; *People* v.
*Gilmore*, 4 Cal. 376; *Jones* v. *State*, 13 Texas 1; *State* v.
*Kattlemann*, 35 Mo. 105; *State* v. *Hill*, 30 Wis. 416, 422;
*Cheek* v. *State*, 4 Tex. App. 444; *Johnson* v. *State*, 29 Ark.
31; *Sylvester* v. *State*, 72 Ala. 201; *Smith* v. *State*, 68
Ala. 424; *State* v. *Joseph*, (La.) 3 So. Rep. 405; *Golding*
v. *State*, (Fla.) 12 So. Rep. 525; *Jordan* v. *State*, 81 Ala.
20; *Smith* v. *State*, 22 Texas App. 316; *Johnson* v. *State*,
(Fla.) 9 So. Rep. 208; *Jones* v. *Sta e*, 13 Texas 168; *Peo-
ple* v. *Apgar*, 35 Cal. 389; *People* v. *Gilmore*, 4 Cal. 376;
*State* v. *McNaught*, 36 Kan. 624; *State* v. *Payson*, 37 Me.
361; *Com.* v. *Herty*, 109 Mass. 348; *State* v. *Brennon*, 55
Mo. 63; *People* v. *Cignarale*, 110 N. J. 23; *Guenther* v.
*People*, 24 N. Y. 100; *People* v. *Dowling*, 84 N. Y. 478;
*Parker* v. *State*, 22 Tex. App. 105; *State* v. *Moon*, 41 Wis.
684; *Robinson* v. *State*, 21 Texas 160; *Bell* v. *State*, 48
Ala. 684, S. C. 17 Am. Rep. 40; *Sipple* v. *People*, 110 Ill.
144; *Logg* v. *People*, 8 Ill. 99; *State* v. *Malling*, 11 Iowa
239; *State* v. *Bruffee*, 75 Mo. App. 389; *Slaughter* v.
*State*, 6 Hump. 410.

*F. C. Archibald*, State's Attorney, and *J. K. Batchelder*
for the state.

The time within which a threat has been made bears upon

the weight and not the admissibility of the testimony. *State
v. Bradley*, 64 Vt. 466; 3 Greenl. Ev., s. 15.

The court correctly instructed the jury that they might
find the respondent guilty of murder in the first degree, not-
withstanding the former verdict. *Com.* v. *Dismarteau*, 16
Gray 1; *Com.* v. *Gardner*, 11 Gray 438; *Bradley* v. *State*,
26 Ga. 579; *People* v. *Keefer*, 65 Cal. 232; *Morris* v.
*State*, 1 Blackf. 37; *Veatch* v. *State*, 60 Ind. 291; *State* v.
*McCord*, 8 Kan. 232; *Bohanan* v. *People*, 17 Neb. 57; 53
Am. Rep. 791; *State* v. *Stanton*, 1 Ired, 424; *Leslie* v.
*State*, 18 Ohio St. 390; *Jarvis* v. *State*, 19 Ohio St. 585;
*State* v. *Behimer*, 20 Ohio St. 572; *State* v. *Commission-
ers*, 3 Hill S. C. 239; *United States* v. *Harding*, 1 Wall.
127; *Com.* v. *Arnold*, 83 Ky. 1; *People* v. *Palmer*, 109
N. Y. 413; *King* v. *Missouri*, 10 *U. S.* 221.

ROWELL, J.   The deceased was killed by a stab in the
breast.   The testimony tended to show that it might have
been made with a knife taken from the prisoner after his
arrest on the day of the homicide.   The state called a phy-
sician of fourteen years' practice, who produced said knife,
and testified that when it came into his possession he exam-
ined it with a glass and that there seemed to be a stain of
a reddish color on the blade.   He was then asked, subject
to exception, to give his opinion as to the cause of the stain.
He answered, "We thought it was stained with blood."
The prisoner's counsel especially excepted to the answer
because the witness said, "We thought," whereupon the
witness said, "I thought it was."   Here was no error.   In
the first place, the witness was not giving his opinion as an
expert, but his opinion based upon what he had observed
and testified to, which was proper.   Besides, he was an ex-
pert, as he was a physician of experience, and could testify
as such, the matter to which he was testifying coming with-
in the scope of his profession and experience.   Nor did the

use of the plural instead of the singular pronoun vitiate. The question called for the opinion of the witness only, and because he happened to use language indicating, what does not appear, that another examined the knife with him, affords no ground for reversal.

The testimony as to what took place between the prisoner and the deceased in the road on Sunday, two days before the homicide, was not irrelevant nor too remote, as claimed. It bore directly on the question of malice and motive, as it tended to show that a crisis had been reached in their affairs, and that the prisoner was very angry at the deceased, as he then subjected her to much abuse and great personal violence because she refused to go home with him and to live with him again, but insisted upon returning to Dilworth's, whence she had just come.

What Lyons testified about hearing the deceased say that the prisoner had hit her with two links of a chain was stricken out at the prisoner's request, on its appearing that the prisoner was not present when it was said, and no exception was taken concerning it, so there is no ground for the argument addressed to us on that point.

The admissibility of the prisoner's threats to kill the deceased if she left him and went with another, the testimony tending to show that that event had happened, or that the prisoner thought it had, was settled when the case was here before—64 Vt. 466. The fact that the testimony now places the making of the threats a few months earlier than it did before does not go to its competency, but only to its weight.

What Bolger said about the prisoner being the one who killed the woman and the prisoner's replies thereto, as they were more or less inculpatory of him, were admissible on general principles. The fact that both were under arrest at the time does not affect the question of admissibility.

The prisoner was properly put on trial again for murder in the first degree, notwithstanding he had before been con-

victed of murder in the second degree and a new trial granted on exceptions. The authorities differ on this question. In many of the states, and probably in a majority of them, it is held that when, on an indictment for murder, the accused is found guilty of murder in the second degree it is virtually an acquittal of murder in the first degree, and that, if the verdict is set aside and a new trial granted at the instance of the accused, he cannot, on such trial, be convicted of murder in the first degree; that the only effect of setting aside the verdict for the lesser crime is, to leave that issue open for another trial and also to leave undetermined the further question of whether the accused had committed any criminal homicide of a grade less than murder in the second degree. The case of *State* v. *Belden*, 33 Wis. 121, 14 Am. Rep. 748, is a leading case of this kind.

But in other states the contrary is held. They say that the necessary result of reversing the judgment and granting a new trial is, to set aside the whole verdict, and that having been done at the instance of the accused, it can neither operate as an acquittal nor a bar to the further prosecution of any part of the crime charged; that the verdict being set aside, it leaves at issue and undetermined the question of the homicide and also the question of whether the accused committed it if one was committed; that on the retrial on a plea of not guilty, the legal presumption of innocence prevails, and that the state is bound to prove every essential fact; that the only effect, therefore, that can be given to the part of the verdict that acquitted the accused of murder in the first degree after the rest of it has been set aside is, to regard it as finding the quality of an act, the existence of which is undetermined, which would be a verdict to the effect that if the accused committed the homicide it was not such a killing as made it murder in the first degree, which would be untenable, as there can be no legal determination of the character of the malice of the accused in re-

spect to a homicide that he is not found to have committed, ·or rather, of which, under his plea, he is presumed to be innocent. A verdict of murder in the second degree is only an implied acquittal of murder in the first degree; and if the verdict from which the inference is drawn is set aside, nothing remains to sustain the inference, and the verdict and its incidents fall together, and the indictment is left to stand .as to the crime of which the accused was convicted as though there had been no trial. This view is sustained by *Bailey* v. *State*, 26 Ga. 579; *State* v. *Behimer*, 20 Ohio St. 572; *United States* v. *Harding*, 1 Wall. Jr. 147, and other ·cases. We understand this to be the view that has obtained and been practiced upon in this state, certainly when the result of the former trial was not, in effect, as it was not here, an acquittal of another crime charged, but only a failure to find the requisites to aggravate the crime found to a higher grade. *State* v. *Kittle*, 2 Tyler, 471, is not to the contrary.

Nor does this view contravene the principle that one cannot be twice put in jeopardy for the same offence, for that means, without his consent, and the matter of taking exceptions is a privilege accorded to the accused but not to the state, and he can avail himself of it or not as he pleases. If he does avail himself of it, he thereby asks for a new trial or a discharge altogether, as the case may be, and in asking for a new trial, he is deemed to waive his right to immunity from further jeopardy in case a new trial is granted. *People* v. *Palmer*, 109 N. Y. 413, 420. The authorities on both sides of this question are referred to in a note to *Commonwealth* v. *Arnold*, (Ky.) 4 Am. St. Rep. 117.

There are one or two other exceptions to the admission of evidence, but they are of minor importance and not sustained.

The prisoner excepted to the charge as to what would not .be sufficient to reduce the crime from murder to man-

slaughter. It is claimed that the charge on this point is essentially wanting in completeness of statement of what the distinction is between murder and manslaughter; that is, of what will reduce the crime of murder in the second degree to manslaughter. The whole charge is made a part of the exceptions, and on looking into that, we find that in parts of it not set out in the exceptions the court fully and accurately stated that distinction and what would reduce the crime of murder in the second degree to manslaughter. It is further claimed that the court did not state, even in the abstract, that if the jury failed to find beyond a reasonable doubt that the fatal blow was struck with malice aforethought it would reduce the crime to manslaughter. But in another part of the charge the court told the jury in so many words that there could be no conviction of murder unless the existance of malice was established beyond a reasonable doubt.

The court charged that if the jury found that the prisoner struck the fatal blow, they would consider, among other things, what happened between them in the room when she was killed, as far as they thought it fairly inferable from the sounds and conversation that were testified to, if they believed that testimony to be true, and from it all determine what took place between the parties before the fatal blow was struck, and then, by an application of the principles before explained to them, determine the degree of criminality that attached to the prisoner's act. The respondent excepted to the clause relating to things fairly inferable from the sounds and conversation testified to. The jury had before been fully instructed as to the measure of proof, and told that the state must establish beyond a reasonable doubt every fact necessary to make out guilt. The prisoner's counsel suggests nothing on the point of this exception that shows error.

The assistant judge who did not sit in this trial because he was a juror on the former trial was not, probably, disquali-

fied for that reason; but whether he was or was not, it is not a ground of exception that he did not sit. The statute makes two judges a quorum, therefore two constitute a legal court, and it is not the legal right of a party that all shall sit if not disqualified. It has always been the practice, as far as we know, for one or the other of the assistants to be absent occasionally though not disqualified, and it never has been thought to lie with a party to object. It is analogous to the case of a grand jury, where eighteen are called but twelve can find a bill. It is not necessary to the validity of an indictment that all should participate. If twelve participate it is enough, though the others are not disqualified. *State* v. *Brainerd*, 56 Vt. 532. *State* v. *Blair*, 53 Vt. 24, is not opposed to this view.

*Judgment that there is no error in the proceedings of the county court, and that the respondent take nothing by his execptions.*