## Martha Abbott, Secretary of the Liberty Union Party v. Richard C. Thomas, Secretary of State

[286 A.2d 272]

No. 171-71

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed November 30, 1971

*Thomas, Alexander & McLoughlin,* Burlington, for Plaintiff.

*James M. Jeffords,* Attorney General, and *William Griffin,* Assistant Attorney General, for the State.

**Barney, J.** A special election for candidates to the United States House of Representatives is pending. When the defendant Secretary of State refused the candidate of the Liberty Union Party a place on the ballot for that election, the plaintiff brought this action on behalf of the party and its candidate. Her right to do so is not questioned here. The case was heard by the county court sitting in chancery and the decision of the defendant upheld.

In order to expedite the matter so that the issues could be determined in time to permit participation, if proper, in the forthcoming election, both sides have cooperated with respect to briefings, filings and hearing. This Court sat in special term at Bennington on November 18, 1971, in order to hear the matter.

Since the Liberty Union Party comes to this election as a minority party, its access to the ballot is governed by special statutes. This type of statutory regulation seeks a pragmatic choice between ready access to the ballot for candidates in order to insure the widest possible representation of in-

terests, and prevention of an expensive cluttering of the ballot to the point of total confusion, by candidates whose constituency is so small as to be meaningless in the total political scene.

In Vermont, political parties that cast "less than five per cent of the votes for the candidates for the office of governor" at the last preceding general election have two possible nominating procedures open to them, one by convention, the other by nominating petitions. 17 V.S.A. §§ 571–73. The only issues before the Court on this appeal relate to the use of these two procedures.

It should first be noted that the sections of the statute cited above are stated to be subject to the provisions of Chapter 9 of Title 17. Chapter 9 contains § 302, which directs that:

> The provisions of this chapter shall be liberally construed, so that the real will of the voters shall not be defeated, and so that the voters shall not be deprived of their right to nominate or participate in the nomination of candidates for office because of informality or failure to comply with the provisions of this chapter as to notice or conduct of the primary, or of certifying the results thereof.

These primary provisions relate also to nominations for general elections under 17 V.S.A. §§ 571–73 both because of specific reference and also because, dealing with the same subject matter, they are to be taken as in *pari materia* with them. *University of Vermont v. Ward,* 104 Vt. 239, 253, 158 A. 773 (1932). The injunction of 17 V.S.A. § 302 must be heeded in dealing with voter representation. It is fitting and suited to the democratic process, and essential to its just operation. It must be applied here.

It is possible to have percentage requirements in these statutes set so high as to disenfranchise all but the principal political parties. Such a requirement was struck down in *Williams v. Rhodes,* 393 U.S. 23, 21 L.Ed.2d 24, 89 S.Ct. 5 (1968), where, at 393 U.S. at 33, a requirement of one per cent of the total electorate was implicitly approved. Since Vermont's requirement, being based on ballots cast, is there-

fore even more liberal, it seems to escape the condemnation of the *Williams* case.

■ But the defendant finds in the language of 17 V.S.A. § 572(a): "Voters representing a political party which polled at least one per cent of the entire vote cast for governor in the state at the preceding general election;" a requirement that a political party nominating by convention must have had a candidate for governor in the field in that election. This reads an ambiguity into the statute not justified by its plain language. It must be pointed out that this kind of requirement could have been clearly spelled out by saying, "a political party *whose candidate for governor* polled at least one per cent . . . ." We find the absence of that language significant. Compare *Amter* v. *Flynn,* 163 Misc. 375, 298 N.Y.S. 872 (Sup.Ct. 1937); *aff'd,* 275 N.Y. 396, 9 N.E.2d 975 (1937).

A literal reading of the statute does not require all qualifying parties to have had a candidate for governor, and it is certainly conceivable that some minority parties may be interested only in a particular state or national political office. To so disqualify them from proceeding by convention would run counter to the rule of liberal construction already noted, and burden the exercise of the franchise by members of that political group.

■ The concern of the legislature was the amount of voter support generated by a political organization, to see if the public interest justified its participation on the ballot. The total vote for governor as the principal state office was selected as the measuring index, and the percentage requirement was allocable to that vote. Likewise, we hold that the attainment of that one per cent is to be determined by the voter interest generated and reflected by the balloting for the leading vote getter on the ballot under that party label. This is the measure of the strength mustered by that party in that election, and its qualification under 17 V.S.A. §§ 571 and 572 is to be tested by the size of that vote.

■ The findings tell us that the Liberty Union Party had a candidate in the last general election that polled more than

one per cent and less than five per cent of the total votes cast statewide for the office of governor. Thus it may properly nominate its candidates under the provisions of 17 V.S.A. § 572. This nominating convention has already been held by the party, and it is the choice of that convention it seeks to have on the ballot. That is its right.

On that account we need not rule on the plaintiff's challenge to the constitutionality of the petition provisions of 17 V.S.A. § 573, *et seq.* We will comment that nothing has been made to appear in this case which suggests any constitutional infirmity in that procedure.

*Judgment of the lower court is reversed. Let an order issue directing the Secretary of State to place on the ballot for the ensuing 1972 special election of congressional officers the candidates designated by the state convention of the Liberty Union Party.*