**Allen Aronstam, et al. v. Edward J. Cashman**
**and**
**Mark H. Horican, et al. v. Virginia L'Ecuyer**

[325 A.2d 361]

Nos. 154-74 & 155-74

Present: **Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.**

Opinion Filed August 19, 1974

Motion for Reargument Denied September 13, 1974

*Richard S. Kohn, Esq.,* American Civil Liberties Union of Vermont, Inc., Montpelier, for Plaintiffs.

*Kimberly B. Cheney,* Attorney General, and *Louis P. Peck,* Assistant Attorney General, for Defendants.

**Per Curiam.** Two assistant judges, both over seventy years of age, have initiated actions for extraordinary relief with this Court pursuant to V.R.A.P. 21. They are joined by several of their constituents who state that they will vote for the plaintiff assistant judges if they are candidates for reelection. Their complaints allege that the defendant county clerks of the plaintiffs' respective counties have refused to accept the plaintiff assistant judges' petitions to be candidates for reelection to the office of assistant judge. Injunctive relief is sought against both defendant county clerks to direct them to accept these petitions and to print the names of the plaintiff assistant judges on the ballots for the primary elections. Acting on the complaints presented to him pursuant to

V.R.A.P. 21, Mr. Justice Larrow has ordered the defendant county clerks to accept the plaintiff assistant judges' petitions pending a decision on the merits if the petitions are in proper form and contain the requisite number of signatures.

The defendant county clerks admit in their answer that they had not accepted these petitions and would have refused to print the names of the plaintiff assistant judges on the ballots because of their belief that the plaintiff assistant judges are disqualified from seeking reelection by reason of age. The basis of their action was a notice sent by the attorney general to all county clerks advising them that under ch. II, § 28c, of the Vermont Constitution, all probate judges and assistant judges over the age of seventy would have to retire.

The relevant portion of ch. II, § 28c, of the Vermont Constitution, reads as follows:

> All justices of the Supreme Court and judges of all subordinate courts shall be retired at the end of the calendar year in which they attain seventy years of age or at the end of the term of election during which they attain seventy years of age, as the case may be, and shall be pensioned as provided by law.

The plaintiffs argue that this provision of the Vermont Constitution is violative of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. The plaintiff assistant judges maintain that this classification on the eligibility of candidacy for the office of assistant judge based upon age is one involving a suspect criterion. The plaintiffs further contend that this classification involves the fundamental right to freely associate with and vote for the candidate of one's choice.

The plaintiffs urge upon this Court a strict judicial scrutiny of a classification that involves suspect criteria or affects fundamental rights nullifying the presumption of constitutionality. They claim that only the promotion of a compelling state interest will justify this classification.

The defendants, on the other hand, point out the absence of precedent holding that classification based upon age demands strict scrutiny. They argue that this classification is entitled to an initial presumption of constitutionality and

must be upheld if a rational or reasonable basis exists to justify the classification.

The tests advanced by both the plaintiffs and the defendants to examine this constitutional provision have been recognized by this Court to determine whether a particular *legislative* classification passes equal protection muster. See *Andrews* v. *Lathrop*, 132 Vt. 256, 259, 315 A.2d 860 (1974); *In re Barcomb*, 132 Vt. 225, 232–34, 315 A.2d 476 (1974); *Veilleux* v. *Springer*, 131 Vt. 33, 40, 300 A.2d 629 (1973); *City of Burlington* v. *Jay Lee, Inc.*, 130 Vt. 212, 216–17, 290 A.2d 23 (1972). However, here the challenge is to the Vermont Constitution, which, in the words of Chief Justice Jay, "is a compact made between the citizens of a state to govern themselves in a certain manner." *Chisholm* v. *Georgia*, 2 U.S. (2 Dall.) 419, 471 (1793).

We recognize that a constitutional power cannot be used by way of condition to attain an unconstitutional result. *Gomillion* v. *Lightfoot*, 364 U.S. 339, 347–48 (1960). See also *In re Senate Bill 177*, 130 Vt. 358, 362, 294 A.2d 653 (1972). However, we also recognize our constitutional duty as announced by Mr. Justice Black in his dissent in *Bell* v. *Maryland*, 378 U.S. 226, 342 (1964), "to construe, not to rewrite or amend, the Constitution." See also *State* v. *Diamondstone*, 132 Vt. 303, 307, 318 A.2d 654 (1974).

In examining the constitutionally mandated retirement age of assistant judges to see if it comports with equal protection requirements, we find the threshold inquiry provided by Mr. Justice Powell in *Weber* v. *Aetna Casualty & Surety Co.*, 406 U.S. 164 (1972), particularly useful. After discussing the two above-argued tests that were offered to examine Louisiana's workman's compensation law which discriminated against unacknowledged illegitimate children in recovering benefits, he noted, "The essential inquiry in all the foregoing cases is, however, inevitably a dual one: What legitimate state interest does the classification promote? What fundamental personal rights might the classification endanger?" *Id*. at 173.

We first turn to the state interest that the classification seeks to promote. The people of the State of Vermont, through

the framers of their Constitution and their Legislature, have more than merely indicated that their judicial officers, both elected and appointed, will be held to vigorous standards separate and apart from other elected and appointed officials. Since 1777, the Constitution has demanded from the courts of Vermont that "justice shall be therein impartially administered, without corruption or unnecessary delay." Vt. Const. ch. II, § 28. Candidates for appointive judicial posts are required to submit to a vigorous screening process. Vt. Const. ch. II, § 28c; 4 V.S.A. ch. 15. The Legislature has seen fit to impose upon judges certain standards of conduct both within and without their official duties. See, for example, 4 V.S.A. § 605, which prohibits political activity by appointed judges, and 12 V.S.A. ch. 3, which disqualifies all judges from acting in any judicial capacity in certain causes in which they have an interest.

The demand for the highest possible standards for the judiciary was clearly understood by Chief Justice Watson in *Cady* v. *Lang*, 95 Vt. 287, 115 A. 140 (1921), wherein an assistant judge was a plaintiff's attorney in a suit brought before the court in which he was a member, although he did not sit as a judge during the trial. It was noted that the statute dealing with judicial disqualification prohibited a judge from acting as trier of a cause or matter in which he has been retained or acted as an attorney or counsel. However, Chief Justice Watson held that in order to make the statute effective, it prohibited, by implication, an assistant judge from acting as attorney or counsel in bringing or managing any suit during his term of office. *Id.* 95 Vt. at 293. He reasoned:

> If this be not so, and a state of circumstances, similar to that suggested above as consequent on such acts of voluntary disqualification, can lawfully exist in connection with the operation of our judiciary system, where in the eyes of the public, are to be found the purity, the integrity, and the impartiality of the courts, contemplated by the Constitution which have ever been averred by the people of the State, and which must be maintained or the honor of the courts will soon be prostrate?

The plaintiffs and defendants do not take issue with the opinion of the attorney general that an assistant judge is a

judicial officer contemplated to be subject to the mandatory retirement provisions of Vt. Const. ch. II, § 28c. Nor do they take issue with the intent of the framers of that provision as expressed in the report of the constitutional commission to the Legislature accompanying the proposals for amendment, which bring mandatory judicial retirement at seventy years of age.

> While it is the opinion of the Commission that it should be possible for judges of advanced years to perform special assignments from time to time as the need arises and if they are able to do so, the commission believes retirement from active judicial office, other than special assignments, should be mandatory upon attainment of the age of 70 years. A mandatory retirement provision, it is felt, would successfully eliminate the problem which otherwise might occur if a justice or judge became advanced in years to properly perform his duties and refused to resign. As noted above, the supreme court would have disciplinary control of all judicial officers, and this authority would include the power to suspend judicial officers from the judicial function for just cause. Finally, in this regard, it should be noted that members of the judiciary, in common with other state officials, would be subject to the general impeachment provision of the Constitution.

It is obvious that the mandatory retirement age for members of the judiciary is a further demand by the people of Vermont to require the highest possible standards for their judges. The plaintiffs make no argument of an absence of a legitimate state interest. They do contend that the interest here involved would be better effectuated utilizing the alternative avenues announced above by the constitutional commission, either disciplinary control by this Court or impeachment.

Each of these proceedings comes into play after the fact occurs which gives rise to the demand for action. The requirement of the selection of a list of candidates for vacancies in appointed judicial offices by the judicial selection board is one method of insuring that both of those proceedings are used as infrequently as possible. Mandatory judicial retire-

ment is but one more attempt at limiting the necessity of public censure of members of the judiciary. If it were otherwise, and more frequent use was made of these proceedings to insure the fitness of the judiciary where its members would not do so voluntarily, the question of Chief Justice Watson would re-echo: "[W]here in the eyes of the public, are to be found the purity, the integrity, and the impartiality of the courts, contemplated by the Constitution which have ever been averred by the people of the State, and which must be maintained or the honor of the courts will soon be prostrate?" *Cady* v. *Lang, supra,* 95 Vt. at 293. See also *Leonard* v. *Willcox,* 101 Vt. 195, 214, 142 A. 762 (1928).

The plaintiff assistant judges complain of being singled out as a class from all elected county officials by the provisions of the mandatory retirement provision for judicial officers. But, in his dissent in *Veilleux* v. *Springer, supra,* 131 Vt. at 46, Justice Barney suggested, "The infinite possibilities of defining classes will frequently reflect the point of vantage from which the definer views the problem." He there offered an alternative classification, and we do so here.

Section 28c, chapter II, of the Vermont Constitution sets apart members of the judiciary from all other state officials, either elected or appointed. By that classification, the assistant judges who reach the age of seventy can point to no harsher treatment concerning mandatory retirement than any other member of the judiciary. Furthermore, to grant the extraordinary relief requested by the plaintiffs would result in preferential treatment to the plaintiff assistant judges by removing from the elected members of the Vermont judiciary the strictures of mandatory retirement while retaining them as to the appointed members of the same class. Such a holding would not be eliminating, but promote, discriminatory treatment between elected and appointed members of the Vermont judiciary. See *Moore* v. *Gilbert,* 131 Vt. 545, 549, 310 A.2d 27 (1973).

The plaintiff constituents join with their plaintiff assistant judges to complain that the mandatory retirement age preventing the plaintiff assistant judges from seeking re-election directly interferes with the correlative rights of a candidate to run for office and of his constituency to vote for

the candidate of its choice. This Court has little tolerance for an unjustifiable burden imposed upon the exercise of the voting franchise by members of a certain political group. See *Abbott* v. *Thomas*, 130 Vt. 71, 73–74, 286 A.2d 272 (1971).

However, mandatory judicial retirement disenfranchises no voter. It imposes no bar to a political group seeking to field a candidate of a certain political persuasion. It does, however, mandate that all members of the Vermont judiciary must retire at the age of seventy. This is a proper exercise of a constitutional limitation in order to hold the judiciary to the highest possible standards. See *Nelson* v. *Miller*, 25 Utah 2d 277, 480 P.2d 467 (1971) ; Annot., 34 A.L.R.2d 155, 171–74 (1954). Where the people of Vermont have announced an approach to be followed in the quest to require high standards for their judges, without doing violence to recognized fundamental rights of individual citizens, this Court is bound to accept the dictates of the Constitution as paramount law.

The plaintiffs maintain that mandatory retirement for judicial officers provided in the Constitution creates an irrebuttable presumption that every judge over seventy is unfit to serve and that if he became incapacitated, he would refuse to resign. Since, they argue, such is not necessarily or universally true in fact, this irrebuttable presumption is impermissible.

A physical disability presents as much of a necessity for judicial disqualification as an interest in the subject matter or a relationship to the parties in interest. *State* v. *Blair*, 53 Vt. 24, 29 (1880). However, the fear that the constitutional commission expressed necessitating mandatory retirement of judges at seventy was not the disability itself, but the lack of recognition of such disability by the individual who would continue to preside in the face of such disqualification. The people of Vermont saw this as a legitimate concern, and made mandatory judicial retirement at seventy a dictate of their Constitution.

This Court has recognized the rule not to pass upon the validity of the concerns expressed or the wisdom of the means that have been chosen to deal with them, but merely to determine whether the action has been responsive to such concerns and whether such action is within constitutional

bounds. *Andrews* v. *Lathrop, supra,* 132 Vt. at 262. Returning again to the threshold inquiry of Mr. Justice Powell in *Weber* v. *Aetna Casualty & Surety Co., supra,* we have not been shown by the plaintiffs any recognized fundamental personal right that has been violated by the people of Vermont by mandating judicial retirement at seventy years of age. On the other hand, we recognize the legitimate state interest in requiring for members of the judiciary the highest possible standards obtainable by minimizing as far as possible the threat of an obviously disabled judge continuing to preside in full view of the eyes of the public. The processes of disciplinary control by this Court and impeachment have been examined and rejected because of the even greater threat of the intervening loss of public confidence in the courts of Vermont during the course of such proceedings.

The plaintiffs have presented no basis to invoke the original jurisdiction of this Court to grant their prayer for extraordinary relief; therefore we enter the following order:

*The order issued by Mr. Justice Larrow requiring the defendants to accept the plaintiff assistant judges' petitions, dated July 30, 1974, is stricken. The plaintiffs' petition for extraordinary relief under V.R.A.P. 21 is denied. No costs are to be taxed against either party. This order and mandate shall issue forthwith.*