**Honorable Gaylord A. SAETRE, Appellant,**

v.

**STATE of Minnesota, Rudy Perpich, et al., Respondents.**

No. C5–86–2176.

Supreme Court of Minnesota.

Dec. 31, 1986.

Michael T. Milligan, Michael J. Ford, St. Cloud, for appellant.

Hubert H. Humphrey, III, Minnesota Atty. Gen., Mark B. Levinger, Sp. Asst. Atty. Gen., St. Paul, for respondents.

## OPINION

AMDAHL, Chief Justice.

We granted the petition for accelerated review of the Honorable Gaylord A. Saetre, Judge of the Seventh Judicial District, to review the decision of the Ramsey County District Court granting the motion of the defendants State of Minnesota, Governor Rudy Perpich and judicial designee William Walker for summary judgment of dismissal of the plaintiff's complaint. We affirm.

On June 24, 1986, the Executive Director of the Minnesota State Retirement System, Paul Groschen, notified the governor that Judge Saetre would reach his mandatory retirement age of 70 on December 21, 1986, and that he would therefore be required by statute to retire at the end of that month. Minn.Stat. §§ 490.121, subd. 12, and 490.125 (1986). Thereafter, on July 8, 1986, the judge was notified in writing of retirement benefits and possible annuity options. On August 14, 1986, the chief justice of this court contacted the governor and certified the continuation of the judicial position to be vacated upon Judge Saetre's retirement on December 31, 1986.

Then expressing a desire to continue in office, Judge Saetre indirectly contacted the attorney general's office seeking an opinion as to the constitutionality of those provisions which would mandate retirement prior to the expiration of the term to which he was elected, a term which is to expire on December 31, 1988. Judge Saetre also directly contacted the governor explaining his view and urging the governor to either accept his interpretation of the statutes and the Minnesota Constitution or, alternatively, consider extending the time in which he might be eligible for retirement benefits to a retirement date within 1 year after his attainment of his 70th birthday, thereby extending the term to December 31, 1987.

By letter dated November 5, 1986, the governor, noting the items of correspondence as well as the attorney general's opinion that Minn.Stat. § 490.125, subd. 1, mandated Judge Saetre's retirement by December 31, 1986, indicated his intention to announce a replacement on or about November 20, 1986. Ultimately, William Walker, a defendant in this action, was announced as the governor's designee.

Despite the early November 1986 notice of the governor's intention to fill the vacancy to be created by mandatory retirement, this action was not commenced until the service and filing of a complaint in the district court on December 9, 1986.[1] The district court expedited its own consideration of the matter, submitted to it on the parties' stipulated facts, which are summarized for purposes of this opinion.

Judge Saetre was originally appointed as a Clay County Judge[2] in August 1962 and

---

1. We note that this court has been requested to rule on an expedited basis although the action might have more properly been commenced at least as early as November 5, 1986, when Judge Saetre was formally notified by the governor of his intention to fill the vacancy. This court recognizes the urgency of the matter, but cautions counsel that in the future one factor in this court's decision to grant expedited consideration will be the promptness with which the underlying action is commenced to facilitate effective judicial review of any claim.

2. In 1962, prior to the promulgation of the County Court Act, Act of June 7, 1971, ch. 951, 1971 Minn. Laws 1985, those judges later desig-

served continuously in that capacity until his August 1968 appointment as a judge of the district court. He was elected and re-elected in 1970, 1976 and 1982, the last 6–year term of which is to expire on December 31, 1988.

The parties have agreed that should Judge Saetre serve in that capacity beyond December 31, 1986, his retirement benefits would be greater because of increased length of service and an anticipated increase in judicial salaries in January 1987. The stipulation also includes the statement that at all times, the judge has intended to serve out all terms to which he has been elected, including his current term and that he "has relied on his expected retirement benefits as part of his total compensation for serving as a [c]ounty [c]ourt and [d]istrict [c]ourt [j]udge." Finally, the record reflects that on December 11, 1986, Judge Saetre filed a "Judges' Retirement Fund Application for Annuity" form conditioned upon final disposition of this matter; the parties have agreed that this application has preserved the judge's constitutional challenge to the mandatory retirement provision while nevertheless satisfying Minn. Stat. § 490.126, subd. 3 (1986).

The district court heard the matter on the parties' cross-motions for summary judgment. It granted the motion of the defendants State of Minnesota, Governor Perpich and William Walker and dismissed the plaintiff's complaint with prejudice by order filed on December 23, 1986. In support of its decision, the district court essentially relied upon constitutional provisions authorizing the development of a retirement system and concluded that Minn.Stat. § 490.125, subd. 1 (1986), the mandatory retirement law here in question, is authorized by Minn. Const. art. 6, § 9. The court found the language of that section to be clear, concise and unambiguous in its authorization to the legislature to enact retirement laws including a mandatory retirement provision. Further, the court held

that nothing presented to it would suggest that the legislature acted in an unreasonable, arbitrary or capricious manner when it mandated retirement at the age of 70. Finally, the court rejected Judge Saetre's argument based upon a breach of contract, concluding that he failed to sustain his burden of establishing such a breach.

This matter is before the court on Judge Saetre's asserted two-pronged attack upon mandatory retirement, namely on a constitutional basis as well as a breach of contract theory. Simply stated, Judge Saetre contends that Minn.Stat. §§ 490.121, subd. 12, and 490.125 (1986), which by their coordinated reading mandate a judge's retirement at age 70, are constitutionally infirm to the extent that they conflict with and are in violation of art. 3 (dealing with the separation of powers of the three branches of government); art. 6 (section 5—designating the qualifications for judges and prohibiting the diminishment of compensation during a term of office; section 7—defining the length of term of office; and section 9—authorizing the legislature to provide by law for retirement, removal or discipline); and art. 8 (removal from office of a judge by impeachment) of the Minnesota Constitution.

■ Prior to the 1956 amendment to the judiciary article of the Minnesota Constitution, no provision specifically dealt with the retirement of judges. However, the 1956 amendment resulted in the creation of art. 6, § 9, which today remains unchanged and provides as follows:

The legislature may provide by law for retirement of all judges and for the extension of the term of any judge who becomes eligible for retirement within [3] years after the expiration of the term for which he is selected. The legislature may also provide for the retirement, removal or other discipline of any judge who is disabled, incompetent or guilty of conduct prejudicial to the administration of justice.

---

nated as county court judges were technically probate court judges. We assume that Judge

Saetre served as a probate court judge.

The legislature's response to that constitutional authorization occurred in 1973 by its enactment of the Uniform Retirement and Survivors' Annuities for Judges Act, Minn.Stat. §§ 490.121 to 490.133 (1986). 1973 Minn. Laws ch. 744. Specifically at issue are Minn.Stat. § 490.121, subd. 12, which defines the term "mandatory retirement date" as "the last day of the month in which a judge has attained 70 years of age" and Minn.Stat. § 490.125, subd. 1, which, noting certain exceptions inapplicable to these proceedings, requires a judge to retire "on the judge's mandatory retirement date."

It is our view that the clear intention of Minn. Const. art. 6, § 9 is to empower the legislature to develop a comprehensive plan for the retirement of judges, not strictly limited to a provision of benefits, but also to include a method and procedures designed to facilitate the orderly retirement of those individuals who have so ably served this state. A mandatory retirement provision is an appropriate component of this comprehensive plan.

■ In so holding, we reject the plaintiff's assertions that mandating retirement is tantamount to a removal of a judge from office for other than the reasons enumerated in the constitution and that, because the retirement benefits are admittedly less than full salary, his compensation has been diminished during the "term of office" for which he was elected. With regard to this latter claim, it is our view that because retirement terminates both the tenure and term of office, no diminution of salary during the "term" has or will occur.

We must then determine whether the specific legislative mandate for retirement of judges at the age of 70 is a proper exercise of legislative authority. In examining legislative history, we note that at various times past, judges' retirement at specified ages has been encouraged, if not mandated, by circumstances surrounding the receipt of retirement benefits. The comprehensive 1973 retirement plan represented sweeping changes in the system, not only increasing the scope and nature of the benefits but also the amount of benefits in exchange for some state assurance that all judges, subject to certain enumerated exceptions, would retire immediately after attaining the age of 70. We hold that the legislative selection of the age of 70 as the optimal time for an individual's retirement constitutes a reasonable exercise of its authority and appears to most readily promote the state's interests in the provision of benefits in exchange for a date certain for relinquishment of office. It is from the perspective of reasonableness that this court will examine legislative action to determine whether it falls within the bounds of constitutional propriety.

We note that a number of other states have laws detailing the mandatory retirement of judges and that in none of those states has a court found its law to be unconstitutional. *See, e.g., Malmed v. Thornburgh*, 621 F.2d 565 (3rd Cir.1980) *cert. denied*, 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219; *Trafelet v. Thompson*, 594 F.2d 623 (7th Cir.1979) *cert. denied*, 444 U.S. 906, 100 S.Ct. 219, 62 L.Ed.2d 142; *Rubino v. Ghezzi*, 512 F.2d 431 (2nd Cir. 1975) *cert. denied*, 423 U.S. 891, 96 S.Ct. 187, 46 L.Ed.2d 122; *Boughton v. Price*, 70 Idaho 243, 215 P.2d 286 (1950); *O'Neil v. Baine*, 568 S.W.2d 761 (Mo.1978); *Nelson v. Miller*, 25 Utah 2d 277, 480 P.2d 467 (1971); and *Aronstam v. Cashman*, 132 Vt. 538, 325 A.2d 361 (1974). Although we have stated in *State v. Amdahl*, 264 Minn. 350, 119 N.W.2d 169 (1962), that constitutional provisions of other states are not controlling of our unique constitutional provisions, such dispositions are instructive.

■ The plaintiff then asserts that at the time he assumed the bench in 1962, there was no mandatory retirement for judges and instead, Minn.Stat. § 490.101 provided for voluntary retirement if a judge had served a minimum number of years and had attained the age of at least 65. He maintains that it was this same law that was in effect in August 1968 when he assumed the district court bench and at that time, a contract was created between the plaintiff and the state allowing him to

serve as a district court judge as long as continually elected, penalized only if he voluntarily and without legislative directive stayed in office beyond his 71st birthday by relinquishing his retirement benefits. While the plaintiff acknowledges that he continued to run for reelection, he contends that he never agreed to the significant changes in the 1973 legislation and has not in the past, or in the present agreed to accept the increased benefits which have been offered.

We disagree with the plaintiff's analysis of his contract with the state and his claim that he received no benefit from the 1973 retirement legislation. The increased benefits [3] would have been available to him had a claim been necessary and, more significantly, our decisions in *Sylvestre v. State*, 298 Minn. 142, 214 N.W.2d 658 (1973), and *Anderson v. State*, 298 Minn. 158, 214 N.W.2d 668 (1973), are dispositive. The significant and legitimate public purpose of this legislation takes precedence over any claim that the legislation substantially impairs this judge's contract rights. *See Christensen v. Minneapolis Municipal Employees Retirement Board*, 331 N.W.2d 740 (Minn.1983), adopting the standard set forth in *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983).

In conclusion, the statutory provisions at issue mandate retirement by a judge at the end of the calendar month in which the individual attains the age of 70. An automatic vacancy in the judicial position is created and the only action required by the retiring judge is the written application to the governor for retirement, Minn.Stat. § 490.101, subd. 1(a); the governor's written order directing retirement, section 490.-101, subd. 1(b); and the filing of the order with the secretary of state, section 490.-101, subd. 3. No option other than retirement is available to a judge who has reached the mandatory retirement age.

Affirmed.

3. Included among those benefits are automatic vesting of the pension, entitlement to disability,

KELLEY, Justice (Concurring Specially).

I concur in the result.

and rights of survivorship. Minn.Stat. §§ 490.-123, 490.124 (1986).