**Alan C. PAGE, Petitioner,**

v.

**Arne H. CARLSON, Governor,
et al., Respondents.**

**No. CX–92–1291.**

Supreme Court of Minnesota.

Aug. 20, 1992.

Thomas C. Kayser, Roberta B. Walburn, and Jan M. Conlin, Robins, Kaplan, Miller & Ciresi, Minneapolis, for petitioner.

Michael J. Wahoske, David Y. Trevor, and James H. Curtin, Dorsey & Whitney, Minneapolis, for respondents.

Heard, considered and decided en banc by DANIEL F. FOLEY, Acting C.J., BRUCE C. STONE, O. RUSSELL OLSON, JOHN F. THOREEN, STEPHEN L. MAXWELL, PAUL G. HOFFMAN and JAMES M. LYNCH, Acting JJ.*

DANIEL F. FOLEY, Acting Chief Justice.

Petitioner Alan C. Page has invoked the original jurisdiction of this court, challenging the respondent Secretary of State's refusal to place his name on the ballot for the 1992 primary election as a candidate for the seat of Associate Minnesota Supreme Court Justice Lawrence R. Yetka. The Secretary of State's action was taken pursuant to a July 6, 1992 order issued by respondent Governor Arne H. Carlson, which extended Justice Yetka's term of office to October 31, 1994, thereby eliminating any election for Justice Yetka's seat on the supreme court in 1992.

The Governor's order was issued under the purview of statutory authority to extend the term of a judge for up to three years if the judge was in office on December 31, 1973 and if, on the date his term expires, he "would not be eligible to retire with full benefits under statutes in effect on December 31, 1973." Minn.Stat. § 490.-124, subd. 2 (1990). Petitioner challenges the constitutional authority of the Governor to extend Justice Yetka's term of office pursuant to this statute.

On August 7, 1992, this court issued an order vacating and nullifying the Governor's order and ordering the Secretary of State to accept the filings of petitioner and two other candidates for Justice Yetka's seat on the supreme court. This opinion now issues to more fully address the parties' arguments and the reasoning underlying the August 7 order.

The Honorable Lawrence R. Yetka was appointed an associate justice of the Minnesota Supreme Court in June 1973. Justice Yetka took office on July 3, 1973, and since that date he has served continually as an associate justice on the supreme court. He will reach the age of 70 on October 1, 1994, and under present mandatory retirement laws, he must retire by October 31, 1994. *See* Minn.Stat. §§ 490.121, subd. 12, 490.-125 (1990).

All judges in the State of Minnesota are required to run for office every six years. Minn. Const. art. VI, § 7.[1] Justice Yetka's current six-year term of office is scheduled to expire on January 2, 1993; thus, ordinarily, in order to continue in office, it would be necessary for him to seek reelection in 1992. However, Justice Yetka applied to Governor Carlson for an extension of his term to October 31, 1994. On July 6, 1992, Governor Carlson signed an order accepting Justice Yetka's application and extending his term as requested to October 31, 1994. The effect of the Governor's order was to eliminate any election for Justice Yetka's seat on the supreme court.

On July 15, 1992, petitioner attempted to file as a candidate for Justice Yetka's seat on the supreme court. Because of Governor Carlson's order extending Justice Yetka's term of office, respondent Joan Anderson Growe, Secretary of State, refused to accept petitioner's filing, thus preventing his name from appearing on either a primary or general election ballot.

Petitioner thereupon invoked the original jurisdiction of the supreme court, seeking an order nullifying and vacating Governor Carlson's July 6, 1992 extension order; requiring the Secretary of State to accept petitioner's filing for Justice Yetka's seat

---

* Appointed pursuant to Minn. Const. art. VI, §§ 2, 10 and Minn.Stat. § 2.724, subds. 1, 2 (1990).

1. In the case of a vacancy between elections, the governor is authorized to appoint a replacement "until a successor is elected and qualified. The successor shall be elected for a six year term at the next general election occurring more than one year after the appointment." Minn. Const. art. VI, § 8.

on the supreme court; and ordering that petitioner's filing for candidacy be deemed timely filed.

Pursuant to petitioner's request, the supreme court issued an order on July 20, 1992 authorizing petitioner and any other potential candidate to file with the Secretary of State a conditional affidavit of candidacy, to be deemed timely filed in the event this court concluded that an election for Justice Yetka's seat should be held.[2]

In light of the potential for real or perceived conflict of interest, all members of the supreme court exercised their rights of recusal, and the above-named retired members of the bench were appointed to hear and decide this case.

There are two critical issues necessary to a decision in this case: (1) whether this court has original jurisdiction to hear and determine this matter; and (2) whether a judge nearing retirement age is automatically entitled to an extension of his term of office to maximize retirement benefits, even though the judge is already qualified under the laws to receive some retirement benefits. This second issue necessarily involves a construction of Minn.Stat. § 490.-124, subd. 2, and its validity in light of the constitutional authority under which it was enacted.

## 1. ORIGINAL JURISDICTION.

█ The present petition was filed in this court under the authority of Minn.Stat. § 204B.44 (1990). That statute provides:

Any individual may file a petition in the manner provided in this section for the correction of any of the following errors, omissions or wrongful acts which have occurred or are about to occur:

(a) An error or omission in the placement or printing of the name or description of any candidate or any question on any official ballot;

(b) Any other error in preparing or printing any official ballot;

(c) Failure of the chair or secretary of the proper committee of a major political party to execute or file a certificate of nomination;

(d) *Any wrongful act, omission, or error of* any election judge, municipal clerk, county auditor, canvassing board or any of its members, *the secretary of state, or any other individual charged with any duty concerning an election.*

The petition shall describe the error, omission or wrongful act and the correction sought by the petitioner. The petition shall be filed with the supreme court in the case of an election for state or federal office * * *.

(Emphasis added.) Respondents claim that section 204B.44 does not provide this court with original jurisdiction to consider the present controversy.[3]

Actions by the Secretary of State are specifically enumerated in the above statute. In fact, at oral argument respondents conceded that, pursuant to the above statute, this court has original jurisdiction over the Secretary of State's actions in this matter. Respondents argue, however, that petitioner is also improperly attempting to use the above election statute to challenge the Governor's judicial retirement order; a use which respondents claim is not contemplated or authorized by the above statute. We disagree. The Secretary of State's refusal to place petitioner's name on the ballot was the direct result of Governor Carlson's term extension order. We are thus compelled to review the Governor's order if we are to decide whether the Secretary of State's refusal to place petitioner's name on the ballot was wrongful.

The Minnesota Constitution provides:

The supreme court * * * shall have original jurisdiction in such remedial cases as are prescribed by law.

Minn. Const. art. VI, § 2. In *Lauritsen v. Seward,* 99 Minn. 313, 109 N.W. 404 (1906),

---

**2.** Justice Yetka did not file a conditional affidavit of candidacy, nor did he seek to intervene as a party in this matter.

**3.** Although petitioner argues that respondents' jurisdictional arguments at this stage of the proceedings are untimely, and that the court has

already accepted jurisdiction over this matter, we point out that subject matter jurisdiction may be challenged at any time. *See Mangos v. Mangos,* 264 Minn. 198, 202, 117 N.W.2d 916, 918 (1962).

this court recognized that the word "remedial" as used in the constitution was intended to encompass cases where, at common law, a remedy would be summarily afforded through the use of certain extraordinary writs, such as prohibition, mandamus, certiorari, and quo warranto. *Id.* at 322, 109 N.W.2d at 408. We concluded in *Lauritsen* that section 204B.44 as it existed in 1906 provided for situations in which mandamus would be a proper remedy. This court reasoned that it was "immaterial what name the legislature gives to the proceeding." *Id.* at 326, 109 N.W. at 410. We thus concluded that the statute properly conferred original jurisdiction upon the supreme court. *See also Hunt v. Hoffman,* 125 Minn. 249, 254, 146 N.W. 733, 734 (1914).

In *State ex rel. Olson v. Scott,* 105 Minn. 513, 117 N.W. 1044 (1908), this court concluded that our original jurisdiction was properly invoked under section 204B.44 to determine whether a candidate for legislative office should not be allowed on the ballot because he had been a member of the legislature during the prior session, when the legislature had passed an act increasing legislators' salaries. This court addressed the issue of original jurisdiction:

> Under [the predecessor to section 204B.44], this court has original jurisdiction to determine such question as is here presented * * *. *The public interest requires that there should be some speedy method of determining whether candidates for public office are legally entitled to have their names placed on the official ballot, and [this section] is intended to accomplish that purpose.*

*Id.* at 515–16, 117 N.W. at 1045 (emphasis added).

In light of the above case law, we conclude that a petition under section 204B.44 is appropriate under the present circumstances to compel the placement of petitioner's name on the ballot. Certainly, the public interest requires a speedy determination whether the Governor's order abrogating an election for Justice Yetka's seat was improper as a matter of law and whether petitioner is entitled to have his name placed on the primary ballot. We are informed that ballots must be printed by August 14, 1992. Resort to the supreme court in the first instance for the resolution of controversies of this nature is both efficient and expedient.[4]

Respondents claim that this court's acceptance of the petition to review the Governor's extension order would violate the separation of powers doctrine mandated by article III, section 1 of the Minnesota Constitution. As petitioner points out, this claim is contradicted by respondents' own suggestion that the Governor's order should be reviewed in the district court, with further review available in this court. We note that executive orders affecting the judiciary previously have been reviewed by the courts with no separation of powers concerns. *See, e.g., Quie,* 299 N.W.2d 119.

This court has the constitutional authority to review the executive order of Governor Carlson, and in exercising that authority in vacating the term extension for Justice Yetka, our action is totally consistent with the doctrine of separation of powers.

## 2. CONSTITUTIONAL AUTHORITY FOR TERM EXTENSION ORDERS.

The Minnesota Constitution mandates the election of judges and specifies

4. We recognize that in *Schroeder v. Johnson,* 311 Minn. 144, 145, 252 N.W.2d 851, 852 (1976), we characterized the errors contemplated by section 204B.44 as "procedural and mechanical"; however, that language was not fully necessary to the decision. *C.f. Clark v. Growe,* 461 N.W.2d 385 (Minn.1990) (although the secretary of state's duty may be "procedural and mechanical", the underlying dispute may not be; this court exercised original jurisdiction under section 204B.44 to determine whether the secretary of state had improperly refused to place the name of a candidate for lieutenant governor on the ballot after her running mate had withdrawn as a candidate for governor).

We also recognize respondents' arguments that challenges to governors' orders affecting the judiciary should be commenced in district court. *See, e.g., Seventy–Seventh Minnesota State Senate v. Carlson,* 472 N.W.2d 99 (Minn. 1991); *Nelson v. Quie,* 299 N.W.2d 119 (Minn. 1980). Both *Quie* and *Carlson* are distinguishable on their facts and are not determinative of the present action, particularly in light of the urgent nature of the present matter and the lack of any substantial factual disputes.

that the term of office of all judges shall be six years. Minn. Const. art. VI, § 7. Election is the principal method of selecting judges:

> Since the adoption of the Minnesota constitution in 1857, there has been a constitutional requirement that judges be elected by the people, except in those situations in which the constitution itself permits appointment by the governor.

*State ex rel. LaJesse v. Meisinger*, 258 Minn. 297, 299, 103 N.W.2d 864, 866 (1960). Constitutional provisions for filling a judicial office by gubernatorial appointment "should be construed as subordinate to the sections providing for, and to be applicable only where vacancies in the judicial office cannot be filled by, the election of judges in regular course." *Enger v. Holm*, 213 Minn. 154, 157, 6 N.W.2d 101, 102 (1942).

Prior to 1956, the Minnesota Constitution did not provide for the retirement of judges. Under statutes in effect prior to 1956, if a judge had served a sufficient number of years to qualify for retirement benefits, but lost an election prior to reaching retirement age, the judge lost all entitlement to any retirement benefits. *See Anderson v. State*, 298 Minn. 158, 160, 214 N.W.2d 668, 669 (1973). The Minnesota Constitution was amended in 1956 to address these concerns:

> The legislature may provide by law for retirement of all judges [and] for the extension of the term of any judge *who shall become eligible for retirement within three years after expiration of the term for which he is selected * * *.*

Minn. Const. art. VI § 10 (adopted Nov. 6, 1956) (emphasis added).

Article VI, section 10 was subsequently amended in 1974; section 10 became section 9. The language of this section was also slightly changed from "shall become eligible" to "becomes eligible." No significance has been attached to this change. *See Saetre v. State*, 398 N.W.2d 538, 540 (Minn. 1986) (article VI, section 9 "remains unchanged" from the 1956 version).

Shortly before the 1956 restructured constitution was adopted, Dean Maynard Pirsig[5] explained the purpose of the term extension provision in article VI, section 9:

> The proposed judiciary article * * * is designed to permit legislation which will protect the judge whose term will expire before he becomes eligible for retirement and is compelled to run again for another term if he is to receive the benefits of the retirement laws.

Maynard E. Pirsig, *The Proposed Amendment of the Judiciary Article of the Minnesota Constitution*, 40 Minn.L.Rev. 815, 840 (1956).

▮ When examining constitutional language, "it is our task to give effect to the clear, explicit, unambiguous and ordinary meaning of the language". *Rice v. Connolly*, 488 N.W.2d 241, 247 (Minn.1992) (citing *State ex rel. Gardner v. Holm*, 241 Minn. 125, 129, 62 N.W.2d 52, 55 (1954)).

> [W]e are interested in reaching the viewpoint of the framers of our fundamental law. Their intent, gathered from both the letter and spirit of the language, is the law. Unambiguous words need no interpretation. * * * We are not empowered to say that these men meant something they did not say. * * * We are not at liberty to give the language of the constitution any meaning other than its natural and ordinary meaning unless such construction would lead to an unjust or otherwise unreasonable result manifestly not intended. The constitution is the mandate of the sovereign power, and we must accept its clear language as it reads. It is our duty to construe the law; we cannot ingraft upon the constitution things that might have been included.

*State ex rel. Putnam v. Holm*, 172 Minn. 162, 166, 215 N.W. 200, 202 (1927) (citations omitted).

▮ The language of article VI, section 9 authorizes the legislature to provide for a

---

5. Dean Pirsig acted as consultant to the committee that drafted the amendment to the judiciary articles of the constitution. *State ex rel. Henne-*

*pin County Bar Ass'n v. Amdahl*, 264 Minn. 350, 353, 119 N.W.2d 169, 171 n. 1 (1962).

term extension if a judge *becomes* eligible for benefits within three years.[6] We conclude this provision is intended to protect the judge who would be *ineligible* for a pension without an extension of his term.

This construction of article VI, section 9 is consistent with the concept that judicial offices ordinarily should be filled by election; the governor's authority to extend a judge's term is available only upon the limited occasion when it becomes necessary for a judge to achieve retirement eligibility, thus avoiding the pitfalls of prior years when, shortly before retirement age, a judge could lose an election and forfeit all rights to retirement benefits.

### 3. STATUTORY AUTHORITY FOR TERM EXTENSIONS.

■ Prior to 1973, the legislature did not exercise its constitutional authority under article VI, section 9 to provide for term extensions for supreme court justices.[7]

In 1973, the Minnesota Legislature adopted the Uniform Retirement and Survivors' Annuities For Judges Act, 1973 Minn.Laws, ch. 744, effective January 1, 1974. A new provision in the 1973 law provided for mandatory retirement of every judge on the last day of the month in which the judge reached age 70. Minn. Stat. §§ 490.121, subd. 12, 490.125 (Supp. 1973). The "new law" also contained the following section:

> A judge who was in office on December 31, 1973 and thereafter and who, by the date on which his term expires, *would not be eligible to retire with full benefits under statutes in effect on De-*

*cember 31, 1973,* may apply to the governor for an extension to serve up to three additional years, stating his intention to retire upon such eligibility. Notwithstanding section 490.125 [the mandatory retirement provision], the governor shall forthwith make a written order accepting such retirement application, and extending the term of office of such judge for such period of time, not exceeding three years, as may be necessary to make such judge eligible for such retirement, solely for purposes of computing benefits hereunder.

Minn.Stat. § 490.124, subd. 2 (Supp.1973) (emphasis added).[8]

The statutes in effect on December 31, 1973 stated that a supreme court justice, upon reaching the age of 70 and having served two full terms (12 years), or upon reaching the age of 65 and having served 15 years, could receive the following retirement benefits for the remainder of his life:

> [O]ne half of the compensation allotted to his office at the time of his retirement plus two and one half percent of the compensation allotted to his office at the time of his retirement for each year, not exceeding 10, which he served in his office in excess of two full terms, or the equivalent thereof, on the supreme court * * *.

Minn.Stat. § 490.025, subds. 2, 3 (1971).

Justice Yetka was in office on December 31, 1973, and thereafter, and, being over 65 years old and having served more than 15 years as a supreme court justice, is now eligible to retire with some retirement ben-

---

**6.** The meaning of the term "eligible" is synonymous with the terms "entitled" or "qualified". *State v. Jansen,* 207 Minn. 250, 254, 290 N.W. 557, 559 (1940); *Taylor v. Sullivan,* 45 Minn. 309, 311, 47 N.W. 802 (1891). Its meaning is "so obvious that we do not feel moved to labor the matter". *Telle v. Northfield Iron Co.,* 278 Minn. 129, 132, 153 N.W.2d 270, 272 (1967) (citing *Jansen,* 207 Minn. at 254, 290 N.W. 559).

**7.** Following the 1956 amendment of the constitution, the legislature did enact statutes consistent with article VI, section 10, authorizing term extensions for probate and district court judges when the term of a judge "would expire three years or less from the time when he would

become eligible to retire." Such extensions were allowed "for three years or such proportion thereof as may be necessary to make [the judge] eligible for such retirement." Minn.Stat. §§ 490.101, subd. 4; 490.12, subd. 6 (1971).

**8.** Minn.Stat. § 490.124, subd. 2 was amended in 1981, at which time several minor changes were made. *See* 1981 Minn.Laws ch. 224, § 230. Pursuant to the law as amended, a judge applying for an extension is required to state his intention to retire upon attaining "eligibility to receive a retirement allowance," and the governor shall extend the term of office as may be necessary "to make the judge eligible for retirement."

efits under the statutes in effect on December 31, 1973. The Governor's order, however, made pursuant to the language "eligible to retire with *full benefits* under the statutes in effect on December 31, 1973," extended Justice Yetka's term in order to allow him to enhance the pension benefits to which he is entitled when his current term expires.

We reiterate that article VI, section 9 of the constitution allows the extension of a judge's term if he will "become eligible for retirement" within three years of his current term. "[P]rovisions in state constitutions are expressions of limitations on the powers of government". *Rice,* 488 N.W.2d 241 (citing *State ex rel. Mattson v. Kiedrowski,* 391 N.W.2d 777, 782–83 (Minn. 1986)). The legislature may not enact a law in derogation of the constitution. *See State ex rel. Nordin v. Erickson,* 119 Minn. 152, 155–56, 137 N.W. 385, 386 (1912). Specifically, control of the legislature over judges is limited by constitutional provisions. *See Sylvestre v. State,* 298 Minn. 142, 150, 214 N.W.2d 658, 663 (1973).

Accordingly, we must construe the phrase "full benefits" consistently with the constitutional limitation that a term extension may be granted to allow a judge to attain eligibility for minimum retirement benefits. *See State ex rel. Forslund v. Bronson,* 305 N.W.2d 748, 751 (Minn.1981) (if there are two possible means of construing a statute, we will adopt the construction that will uphold its constitutionality).

Respondents argue that the term limitation provision in article VI, section 9 must be construed in light of the section's first sentence, which constitutes a broad grant of legislative power to "provide by law for retirement of all judges." Indeed, we recognize that the intent of article VI, section 9 was to develop a "comprehensive plan for the retirement of judges * * * includ[ing] a method and procedures designed to facilitate the orderly retirement of those individuals who have so ably served this state." *Saetre v. State,* 398 N.W.2d 538, 541 (Minn. 1986). However, that broad power is expressly limited by the ensuing provision that term extensions are authorized only to allow a judge to "become eligible" for retirement benefits.

We conclude that Justice Yetka became eligible on October 1, 1989 to retire with pension benefits, having served 15 years, and having reached the age of 65. *See* Minn.Stat. § 490.025, subd. 3 (1971). At that time he was entitled, under laws in effect on December 31, 1973, to apply for and receive retirement benefits.[9]

Our conclusion is consistent with this court's decision in *Dosland v. State,* 288 N.W.2d 691 (Minn.1979).

In *Dosland,* we concluded that a county court judge's disability retirement benefits could be extended beyond his mandatory retirement date since, pursuant to section 490.124, subdivision 2, he would have been entitled to obtain an extension of his term, had he not become disabled. We noted that on December 31, 1976, when the judge's term would have expired, he would have been over 70 years of age; therefore, ordinarily his eligibility for service would have ended on that date. However, we concluded that because the judge would not have been eligible to retire with full benefits on that date under statutes in effect on December 31, 1973, he would have been entitled to apply to the governor for an extension.

We stated in *Dosland* that the judge "would not have been eligible to retire with full benefits under statutes in effect on that date because he had not served the 20 years then requisite." *Id.* at 693. On December 31, 1973, the statutes provided that when a probate court judge reached the age of 70 and had served for 20 years *or more,* he could receive retirement benefits in the amount of one-half the compensation allotted to his office at the time of retirement. Minn.Stat. § 490.12, subd. 2 (1971). Accordingly, in *Dosland,* we construed "full benefits" as the minimum benefits allowable.

Respondents point to several prior executive orders that have construed section

---

**9.** Although Justice Yetka has elected to receive benefits calculated under the new laws, that election would not preclude a term extension under section 490.124, subdivision 2, if appropriate.

490.124, subdivision 2 to allow extensions of judges' terms to allow them to maximize already available retirement benefits. Initially, we note that there is no claim the prior executive orders were ever challenged in the courts. In any event, the legality of those prior orders is not an issue before us, and those orders do not control the case at hand. Our decision today controls the case at hand and is prospective only.

To summarize, here petitioner, qualified to seek election to Justice Yetka's seat, has challenged the executive order of Governor Carlson extending the term of Justice Yetka to October 31, 1994, and in doing so, has invoked the original jurisdiction of this court.

The Minnesota Constitution in article VI, section 9 makes clear, and we so hold, that an extension of a judge's term should be granted only when it is necessary to permit the judge to serve for the minimum number of years to become eligible for a pension, but the extension should not be granted to permit a judge to maximize or enhance a pension for which the judge is already eligible, and thus avoid an election.

The authority of the Governor to act pursuant to section 490.124, subdivision 2 remains unimpaired for application in a proper case. However, under the facts here, the executive order of Governor Carlson extending Justice Yetka's term conflicts with the clear and unambiguous language of article VI, section 9 of the Minnesota Constitution, and the constitution must prevail.

Accordingly, we re-affirm our order of August 7, 1992 vacating and nullifying in all respects the executive order by Governor Carlson extending the term of Justice Yetka to October 31, 1994, and directing the Secretary of State, Joan Anderson Growe, to accept the conditional filings of petitioner and others for the Yetka seat, to regularize those filings, and to process the applications as provided by law.