**In the Matter of the RETIREMENT BENEFITS OF the Honorable Lawrence R. YETKA.**

**No. C8–96–486.**

Court of Appeals of Minnesota.

Sept. 10, 1996.

---

Thomas L. Fabel, Christopher H. Yetka, Lindquist & Vennum, P.L.L.P., Minneapolis, for Relator the Honorable Lawrence R. Yetka.

Hubert H. Humphrey, III, Minnesota State Attorney General, Jon K. Murphy, Julie A. Leppink, Assistant Attorneys General, St. Paul, for Respondent Minnesota State Retirement System Board of Directors.

Considered and decided by SCHUMACHER, P.J., and CRIPPEN and HOLTAN, JJ.

## OPINION

HOLTAN, Judge.*

Justice Yetka appeals the decision of the Minnesota State Retirement System Board denying him benefits based on the increased salary for justices that took effect January 4, 1993. We reverse.

## FACTS

Relator, the Honorable Lawrence R. Yetka (Justice Yetka), became an associate justice of the Minnesota Supreme Court on July 3, 1973, and served continually until his retirement. His last term of office was scheduled to expire in January 1993. He did not seek re-election. Instead, on July 6, 1992, Governor Arne H. Carlson granted Justice Yetka an extension of his term to October 31, 1994, his mandatory retirement date.[1] The Minnesota Supreme Court vacated the executive order granting this extension because it conflicted with the Minnesota Constitution. *Page v. Carlson*, 488 N.W.2d 274, 282 (Minn. 1992). The election for Justice Yetka's office was held in the fall of 1992 and won by Justice Alan C. Page, who was sworn into office at 8:30 a.m. on January 4, 1993.

In 1973, the Minnesota Legislature adopted the Uniform Retirement and Survivors' Annuities for Judges Act (the uniform plan), which became effective on January 1, 1974. 1973 Minn.Laws ch. 744. Judges who were in office before January 1, 1974, and who attained the normal retirement age of 65, were given the option of receiving retirement benefits computed under the statutory formula in effect on December 31, 1973 (the old plan), in lieu of the benefits computed under the uniform plan. Minn.Stat. §§ 490.124, subd. 8, 490.025, subd. 3 (1992).

In 1989, based on the recommendation of the Minnesota State Compensation Council, the Minnesota Legislature voted to increase by six percent the salaries of certain state officers, including associate justices. 1989 Minn.Laws ch. 335, art. I, § 42. In 1991, however, the implementation of this salary increase was delayed:

> The salaries of legislators, judges, and constitutional officers are frozen at current levels. The salary increases recommended in 1989 by the compensation council to take effect January 6, 1992, must not take effect until January 4, 1993.

1991 Minn.Laws ch. 345, art. I, § 28.

On October 22, 1992, Justice Yetka formally applied for a retirement annuity with respondent, the Minnesota State Retirement System (the MSRS). He exercised his option to have his benefits calculated under the old plan formula. Because he served as an associate justice for 19 years, the old plan entitled him to 67.5 percent of the "compensation allotted to his office at the time of his retirement." *See* Minn.Stat. § 409.025, subd. 2 (Supp.1973). On the notarized forms concerning application for annuity and distribution of deferred compensation, Justice Yetka listed January 2, 1993, as his last day of service or termination of employment.

On December 18, 1992, under the mistaken impression that the salary increase for justices would become effective on January 1, 1993, Justice Yetka contacted the MSRS, inquiring whether his pension would reflect the increase, inasmuch as his term of office would not expire "until January 3, 1993." On December 29, 1992, the MSRS informed Jus-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. "Mandatory retirement date" is defined as the last day of the month in which a justice has attained 70 years of age. Minn.Stat. §§ 490.121, subd. 12, 490.125 (1990). Justice Yetka reached age 70 on October 1, 1994.

tice Yetka that his pension would be calculated on $89,052, an amount that did not reflect the salary increase. On January 28, 1993, the MSRS sent Justice Yetka a letter detailing his retirement benefits and again stating that his pension would be based on $89,052.

By letter on April 24, 1995, Justice Yetka asked the MSRS to recalculate his benefits based on the increase, contending his term of office did not formally end until Justice Page took the oath of office on January 4, 1993. On June 7, 1995, the executive director of the MSRS denied Justice Yetka's request. On August 3, 1995, Justice Yetka petitioned for review of this decision by the MSRS Board of Directors as provided by Minn.Stat. § 352.031, subd. 3 (1994). On November 1, 1995, a hearing was held before an administrative law judge (ALJ) to determine the correct benefit amount payable to Justice Yetka.

On November 21, 1995, the ALJ issued findings of fact, conclusions of law, and a recommendation that the MSRS Board of Directors affirm the decision of the executive director and deny Justice Yetka's petition for review. Among its conclusions of law, the ALJ determined that Justice Yetka "did not affirmatively abandon his office prior to January 4, 199[3]," that his "final day in office was January 3, 1993, which was the date of his retirement." The ALJ found that Justice Yetka was willing and able to serve as a justice at any time prior to the qualification of his successor. This finding implies that Justice Yetka's retirement was involuntary, that is, mandated by the expiration of his term. The ALJ concluded Justice Yetka's final day in office was January 3, 1993. (The retirement date and expiration of term are not the same in all cases.) This finding of retirement date was prompted by information from the supreme court administrator's office.

On February 2, 1996, the MSRS Board issued its final order, adopting the ALJ's recommendation and report in its entirety and incorporating the ALJ's findings of fact and conclusions of law as its own. On March 4, 1996, Justice Yetka petitioned this court for a writ of certiorari, pursuant to Minn.

Stat. § 352.031, subd. 9 (1994) and Minn. R.Civ.App.P. 115.01.

## ISSUE

Did the MSRS Board err in calculating Justice Yetka's benefits without regard to the salary increase effective January 4, 1993?

## ANALYSIS

We review a decision of the MSRS Board as we would any administrative agency decision. The MSRS appeal procedure allows a person whose request has been denied by the MSRS executive director to petition for review of that decision by the MSRS Board. Minn.Stat. § 352.031, subd. 3 (1994). The MSRS Board

> in its sole discretion may refer a petition brought under this section to the office of administrative hearings for a contested case hearing under sections 14.57 to 14.69.

Minn.Stat. § 352.031, subd. 10 (1994). Section 14.69 provides:

> In a judicial review under section 14.63 to 14.68, the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusions, or decisions are:
>
> (a) In violation of constitutional provisions; or
>
> (b) In excess of the statutory authority or jurisdiction of the agency; or
>
> (c) Made upon unlawful procedure; or
>
> (d) Affected by other error of law; or
>
> (e) Unsupported by substantial evidence in view of the entire record as submitted; or
>
> (f) Arbitrary or capricious.

Minn.Stat. § 14.69 (1994). Furthermore, a public retirement fund board is analogous to an administrative agency. *Axelson v. Minneapolis Teachers' Retirement Fund Ass'n,* 544 N.W.2d 297, 299 (Minn.1996). The applicant for relief or benefits carries the burden of proof. *In re City of White Bear Lake,* 311 Minn. 146, 150, 247 N.W.2d 901, 904 (1976).

▮ We, therefore, use the section 14.69 standard of review because the MSRS Board referred the matter to the office of administrative hearings under Minn.Stat. § 352.031, subd. 10, which incorporates by reference the statutory standard. Although the substantial evidence test is applicable to the MSRS Board's factual findings, we "may conduct an independent examination" of the board's record and decision in order to draw our own conclusion as to the propriety of that decision. *See In re Signal Delivery Serv.*, 288 N.W.2d 707, 710 (Minn.1980); *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 825 (Minn.1977) (applying the statutory standard to a public service commission decision). Furthermore, because we conclude the determination that Justice Yetka retired on January 3, 1993, is a legal and not a factual question, we must decide whether it is arbitrary and capricious in light of the constitution and applicable statutes.[2] We review questions of law de novo. *Western Insulation Servs. v. Central Nat'l Ins. Co.*, 460 N.W.2d 355, 357 (Minn.App.1990).

Justice Yetka elected to have his retirement benefits calculated using the old plan formula. Under this formula, a justice who has served for at least two full terms is entitled to a lifetime pension of

> one half of the compensation *allotted to his office* at the time of his retirement plus two and one half percent of the compensation allotted to his office at the time of his retirement for each year, not exceeding 10, which he served in his office in excess of two full terms * * *.

Minn.Stat. § 490.025, subd. 2 (Supp.1973) (emphasis added).

▮ The MSRS Board contends that because article VI, section 7, of the Minnesota Constitution specifically gives the legislature authority to provide for the retirement of judges, the statute alone should control. Because the MSRS Board argues that the date of Justice Yetka's retirement is a *fact* question, it contends that he failed to prove that he did not retire until January 4, 1993. But the ALJ's finding that Justice Yetka retired on January 3, 1993, is based on a legal determination that Justice Yetka's term expired on that date.

Justice Yetka focuses on the phrase "compensation allotted to his office at the time of his retirement" to argue that (1) the amount of compensation on which the formula is based should be the amount of compensation authorized for an associate justice at the actual moment of his retirement and (2) as a matter of law, the date of his retirement is the date on which his term of office expired, January 4, 1993. We agree and reverse.

The MSRS Board argues that the statutory reference in Minn.Stat. § 490.025 to compensation "allotted to his office" means Justice Yetka's term in particular and not the impersonal term of a justice. The board argues that January 4 was the first day of Justice Page's term of office, that no two justices can share the same day, and that January 4 was not, therefore, part of Justice Yetka's term of office. However, the statute does not define terms of office; it refers to the compensation allotted to the office at the time of a justice's retirement. Under either interpretation, the result is the same.

"Compensation allotted" includes any legislative act which designates the amount of compensation, or a formula to determine compensation, plus the terms and conditions of the allotted compensation, if any. This statutory scheme is not tied to the time of commencement or expiration of a term of office, or to any particular term. The pension statute is triggered by retirement, whether voluntary or by operation of law, plus an application for payment and compliance with administrative procedures.

The salary increase for associate justices, although approved in 1989, did not take effect until January 4, 1993. 1991 Minn.Laws ch. 345, art. I, § 28. In fact, it became effective at 12:01 a.m. on that day. *See* Minn.Stat. § 645.02 (1992) (stating that an act "takes effect at 12:01 a.m. on the day it becomes effective").

▮ In support of its contention that any benefits accruing on January 4, 1993, belong

---

2. The factual finding that the official retirement date was the last day of the term is not in error; the legal conclusion that January 3 was Justice Yetka's final day in office is erroneous.

solely to Justice Page, the board relies on what it characterizes as the "practical reasoning" of *State ex rel. Farrer v. McIntosh,* 109 Minn. 18, 122 N.W. 462 (1909), *reh'g denied,* 109 Minn. 18, 126 N.W. 1135 (1909), asserting that on January 4, 1993, the office of associate justice belonged only to Justice Page, who had a reasonable time after midnight to qualify and assume his duties.

In *McIntosh,* P.A. Walsh, the sheriff of Koochiching County, was re-elected in November 1908, but died two months before his new term commenced. 109 Minn. at 20, 122 N.W. at 463. Hugh T. McIntosh resigned as county commissioner, and the remaining commissioners (old board) appointed him to fill the vacancy for the remainder of Walsh's unexpired term "until his successor qualify." On the first Monday in January (January 4, 1909), before the new board of county commissioners took their oath of office, the old board met and appointed McIntosh as sheriff for the two-year term beginning that day. The new board, at a meeting on January 27, 1909, appointed Henry W. Farrer to the same two-year term. The issue before the supreme court was whether the old board had the authority to fill the vacancy for the two-year term. *Id.* at 21, 122 N.W. at 463.

*McIntosh* held that the old board had no such authority. *Id.* at 22, 122 N.W. at 464. The Minnesota Constitution provided that all terms of office terminated and the official year commenced on the first Monday in January.[3] *Id.* at 21, 122 N.W. at 463–64. "The day begins at twelve o'clock midnight, and the law does not recognize fractions of a day." *Id.* at 21, 122 N.W. at 464 (citation omitted).

It is fair to assume, however, that it was not intended by the framers of the constitution that the change in office should take place at twelve o'clock midnight. *The incoming officers should have a seasonable and reasonable time at the beginning of the business portion of the first official day in which to qualify and assume their duties.* Some unforeseen circumstance might delay the opportunity to qualify until the latter part of the day; but that fact could not result in depriving that day of

the prestige accorded to it by the constitution. It is fairly to be inferred from the language of the section that, *although the whole of the day belongs to the new official year,* yet *for convenience,* and to prevent an interregnum, *the qualification of the new officer may take place at a convenient hour,* according to the exigencies of the case.

*Id.* at 21–22, 122 N.W. at 464 (emphasis added).

Referring to the general impression in 1909 that outgoing officeholders were entitled to hold over after the first Monday in January until their successors qualified, *McIntosh* acknowledged that "[s]uch would no doubt be the rule in the absence of constitutional restrictions," but deferred to the controlling constitutional provision by stating that

when the constitution fixes the day upon which the official term shall begin, there is no legislative authority to continue the office beyond that period, even though the successor fails to qualify within the time.

109 Minn. at 21, 122 N.W. at 464.

The court denied a rehearing in *McIntosh* even though a statute providing that county commissioners shall hold their office until their successors are elected and qualified had been inadvertently overlooked when writing the opinion. 109 Minn. at 23, 126 N.W. at 1135. Because a constitutional provision controls over a statutory provision, the supreme court stated, "This inadvertence, however, is of no importance, as the statute is ineffective." *Id.*

The present situation is distinguishable from *McIntosh* because two constitutional provisions apply. The Minnesota Constitution provides (as it apparently did in 1909) that

[t]he official year for the state of Minnesota commences on the first Monday in January of each year and all terms of office terminate at that time.

Minn. Const. art. VII, § 7. However, the constitutional provision specifically applicable to judges states that their term of office shall

---

**3.** The same was true in 1993. *See* Minn. Const. art. VII, § 7.

be "six years and until their successors are qualified." Minn. Const. art. VI, § 7. This provision extends the six-year term for an indefinite period of time and expires when a successor is qualified.

Minnesota statutory law provides:

Every person elected or appointed to any other public office, including every official commissioner, or member of any public board or body, before transacting any of the business or exercising any privilege of such office, shall take and subscribe the oath defined in the Constitution of the state of Minnesota, article V, section 6.

Minn.Stat. § 358.05 (1992).

We are mindful of the underlying principles set out in *Page* that have previously guided the supreme court in interpreting constitutional language. First,

[w]e are interested in reaching the viewpoint of the framers of our fundamental law. Their intent, gathered from both the letter and spirit of the language, is the law. Unambiguous words need no interpretation. * * * We are not empowered to say that these men meant something they did not say. * * * We are not at liberty to give the language of the constitution any meaning other than its natural and ordinary meaning unless such construction would lead to an unjust or otherwise unreasonable result manifestly not intended. The constitution is the mandate of the sovereign power, and we must accept its clear language as it reads. It is our duty to construe the law; we cannot ingraft upon the constitution things that might have been included.

488 N.W.2d at 279 (quoting *State ex rel. Putnam v. Holm,* 172 Minn. 162, 166, 215 N.W. 200, 202 (1927)).

In light of the court's duty, the rule of statutory construction concerning conflicting laws should apply with particular force when the court interprets seemingly conflicting constitutional provisions: the two shall be construed, if possible, to give effect to both. *See* Minn.Stat. § 645.26, subd. 1 (1994). Generally, the rules that are applicable to the construction of statutes are equally applicable to the constitution. *State ex rel.*

*Mathews v. Houndersheldt,* 151 Minn. 167, 170, 186 N.W. 234, 236 (1922); *Badger v. Hoidale,* 88 F.2d 208 (8th Cir.1937). Statutes of specific application prevail over statutes of general application when there is a conflict, and each cannot be given full effect. *See Ehlert v. Graue,* 292 Minn. 393, 397, 195 N.W.2d 823, 826 (1972); *Beck v. Groe,* 245 Minn. 28, 41, 70 N.W.2d 886, 895 (1955).

We note first that article VI, section 7, prevents a vacancy in an essential office in the judicial branch of government. This is a matter of substance and public concern. This concern is significant and will accommodate the concept of overlapping terms of office. Article VI, section 7, applies only to judges, while article VII applies to all offices. The special provision controls over the general.

The MSRS Board relies on *McIntosh* for the proposition that the law does not recognize fractions of a day, urging us to conclude that January 4, 1993, was Justice Page's day. The question to ask is, for what purpose does the law not recognize fractions of a day? *McIntosh*'s stated purpose is not to deprive "that day of the prestige accorded to it by the constitution" as the constitutional commencement of a new term of office. 109 Minn. at 22, 122 N.W. at 464. This purpose points to form, defining an empty block of time. It does not point to function, the substance of that block of time. These seemingly conflicting constitutional provisions, article VI, section 7, and article VII, section 7, can be interpreted to reach that degree of effect, for both, required for concinnity.

Term has independent existence. It does not require function. On the other hand, function requires a term in order to exist, although *McIntosh* seems to hold to the contrary on the "practical reasoning" approach. However, *McIntosh* actually creates a de facto term, during which the predecessor official can perform the functions of the office until the successor qualifies. It is obvious that a public official can only function during his own term, and not during the term of another official. *McIntosh* recognizes that terms can be overlapping when the function in one term does not overlap the function in the other. In the instant case, the overlapping

term is created by the constitution. A de facto term and function does not, and a de jure term and function does, generate compensation and pension benefits under the salary statute and pension statutes in effect at the time in question.

Article VII, section 7, extends a justice's term of office beyond the stated six-year term. This specific provision takes precedence over the general provision stating that all terms of office terminate on the first Monday in January. Justice Yetka's term expired when his successor qualified to perform the duties of associate justice, at 8:30 a.m., January 4, 1993, when Justice Page was sworn in. Under *McIntosh,* Justice Page's term commenced on January 3, 1993, at midnight. But Justice Page was not "qualified" as Justice Yetka's successor, within the meaning of Minn. Const. art. VI, § 7, until he took the oath of office at 8:30 a.m. on January 4, 1993. Justice Yetka's term of office could not have expired until that moment. From midnight until 8:30 a.m. January 4, 1993, Justice Yetka's and Justice Page's terms overlapped, but their ability to exercise the powers of the office did not coexist. Justice Yetka could have exercised the powers of the office, in his own term, until 8:30 a.m. Justice Page could only exercise the duties of his office, in his own term, commencing at 8:30 a.m. on January 4, 1993.

There are no inconsistencies or conflicts. Each justice is qualified to exercise the powers of the office in his own term. The stated purpose of *McIntosh* is preserved to Justice Page and each justice is entitled to all the prerogatives and emoluments of his office in his own term. The same increased compensation is applicable to Justice Yetka's term and to Justice Page's term under Minn.Stat. § 490.025, subd. 2, and 1991 Minn.Laws ch. 345, art. I, § 28.

The MSRS claims that it is significant that:

1. Justice Yetka did not claim compensation for all or any part of January 4, 1993. (Any such claim may now be barred by statute of limitation.)

2. Justice Yetka did not make any contribution to the pension fund for January 4, 1993.

3. Justice Yetka did not actually perform any service of the office on January 4, 1993.

If Justice Yetka is entitled to compensation for January 4, it is immaterial that he did not claim it. The amount is de minimis. In fact, the compensation earned and any pension contribution due, which is also de minimis, would be set-off against each other, and we see no significance in either.

The office of justice carries annual compensation, paid in equal monthly installments, for the availability of a justice as well as the actual performance of duties. It is immaterial that there may be no duties to perform or no performance on any given day. Notably, Minn.Stat. § 490.025, subd. 2, the pension formula, refers to allotted compensation, and not to actual service or to compensation received.

The MSRS Board is concerned about incurring an obligation to two justices for the same day. Any proven inequity or prejudice to the pension scheme may be corrected by appropriate legislation. There appears to be no impediment to compensating each justice for the hours during which each was qualified to function on January 4, 1993. It is clear that Justice Yetka had the authority to perform all the duties of a justice from midnight on January 3 until 8:30 a.m. on January 4. Recognition that Justice Yetka's term ended at 8:30 a.m. on January 4 does not preclude recognition that it extended *until* that hour, and that he was an associate justice of the Minnesota Supreme Court on January 4, 1993, *until* his successor was qualified to discharge the duties of that office.

It is elementary that performance or the availability to perform the duties of an office generates compensation and compensation generates pension benefits. Such is the case here.

## DECISION

The board's finding that Justice Yetka did not abandon or otherwise relinquish the office of associate justice is supported by the record. As a matter of law, the term of office extended until a successor was quali-

fied, on January 4, 1993, and that date constituted the day of Justice Yetka's retirement.

Justice Yetka's retirement benefits must be calculated on the basis of the compensation allotted to the office of associate justice at 12:01 a.m. on January 4, 1993.

**Reversed.**