Brian BEGIN, State Chair of the Green Party of Minnesota, as an individual and as a registered voter; and the Green Party of Minnesota, an association of individuals of a registered political party, Petitioners,

v.

Mark RITCHIE, in his official capacity as Secretary of State of the State of Minnesota, and Lori Swanson, in her official capacity as Attorney General of the State of Minnesota, Respondents.

No. A13–1002.

Supreme Court of Minnesota.

Sept. 11, 2013.

Andrew J. Dawkins, Saint Paul, MN; and David Schultz, Saint Paul, MN, for petitioners.

Lori Swanson, Attorney General, Nathan J. Hartshorn, Assistant Attorney General, Saint Paul, MN, for respondents.

OPINION

PER CURIAM.

On June 6, 2013, the Green Party of Minnesota and its chair, Brian Begin, filed

a petition pursuant to Minn.Stat. § 204B.44 (2012), asserting that Respondent Secretary of State Mark Ritchie erred in decertifying the Green Party as a minor political party. Petitioners seek an order from this court directing Secretary Ritchie to correct his alleged error by restoring the Green Party's minor political party status as of January 1, 2013. Because we conclude that the Green Party's claims fall outside the scope of Minn.Stat. § 204B.44, we dismiss the petition.

We begin with a discussion of the statutes governing political party status in Minnesota. Political parties in Minnesota are designated as either "major" or "minor" based generally on the votes the party's candidates received in recent elections and the candidates presented by the party for elective office. Minn.Stat. § 200.02, subds. 7(a)–(b), 23 (2012). A minor political party must comply with additional requirements to fulfill the statutory definition. Specifically, a minor political party must certify to the Secretary of State by December 31 in the year of a statewide general election that it has held a party convention, adopted a state constitution, designated a state party chair, and met the remaining election-related requirements. Minn.Stat. § 200.02, subd. 23(a).

Once a political party attains major or minor status, it retains that status for "at least two state general elections" even if the party "fails to present a candidate who receives the number and percentage of votes" required for major or minor party status. See Minn.Stat. § 200.02, subds. 7(d), 23(c). But if a minor party's candidates "fail to receive the number and percentage of votes required" at "each of two consecutive state general elections," the

party loses minor party status. Minn.Stat. § 200.02, subd. 23(d).

Status as a qualified major or minor political party provides the opportunity to participate in certain tax-generated subsidy programs administered by the Department of Revenue and the Campaign Finance and Public Disclosure Board. See Minn.Stat. § 10A.31 (2012); Minn.Stat. § 290.06, subd. 23 (2012).[1] The taxpayer contributions to these programs are distributed to political parties with either "major" or "minor" status as defined by Minn.Stat. § 200.02. See Minn.Stat. § 10A.01, subds. 23, 25 (2012). The Secretary of State must "notify each major and minor political party by the first Monday in January of each odd-numbered year of the conditions necessary . . . to participate in" these programs. Minn.Stat. § 10A.31, subd. 3a(c). Following certification of the results of a general election and each year on July 1, the Secretary of State must notify political parties, the Revenue Department, and the Campaign Finance and Public Disclosure Board "of the political parties that qualify" for participation in these programs. Minn.Stat. § 10A.31, subd. 3a(d).

With this statutory overview in mind, we now turn to the facts presented by this petition, which are undisputed. In the 2010 election, the Green Party's candidate for State Auditor received over 1 percent of the total votes cast, thus satisfying one of the requirements for minor political party status. Minn.Stat. § 200.02, subd. 23(b) (stating "the political party must" present a candidate for "state auditor" who receives "votes in each county that in the aggregate equal at least one percent of the total number of . . . vote[s] in the elec-

---

1. The political contribution refund program was ineffective for contributions made after June 30, 2009 and before July 1, 2013. See Act of May 21, 2010, 1st Spec. Sess., ch. 1, art. 13, § 4, 2010 Minn. Laws 2019, 2056; Act of July 20, 2011, 1st Spec. Sess., ch. 7, art. 6, § 22, 2011 Minn. Laws 977, 1050.

tion"). After the 2010 general election, the Green Party submitted a timely certification to the Secretary of State, confirming that in addition to the vote count achieved by its State Auditor candidate, it had: (a) elected a Party Chair; (b) adopted a State Party Constitution; and (c) held membership meetings. *See* Minn.Stat. § 200.02, subd. 23(a). Thereafter, the Secretary of State notified the Green Party, the Revenue Department, and the Campaign Finance and Disclosure Board that the Green Party "qualif[ied] as [a] minor political part[y] as defined in Minnesota Statutes section 200.02, [s]ubd. 23."

In 2012, the Green Party's presidential candidate received less than 1 percent of the general election votes in Minnesota for that office. Despite a reminder from the Secretary of State about the conditions necessary to retain minor party status and the year-end certification deadline, the Green Party did not "file[ ] with the secretary of state [by] December 31 ... a certification that [it] ha[d] met" the statutory requirements for minor political party status. Minn.Stat. § 200.02, subd. 23(a). It did not do so, the Green Party explains, because it assumed that it retained minor party status for at least two state general election cycles, regardless of the election results; because communications from the Secretary of State before the 2012 general election stated that the party had minor political party status; and because it did not recognize that the Secretary of State's year-end reminder was a deadline of consequence.

In February 2013, the Secretary of State notified the Revenue Department, the Campaign Finance and Public Disclosure Board, and the Green Party that the Green Party had not filed the required certification and therefore no longer qualified as a minor political party. Again, the Green Party did not respond to this notice. In April 2013, the Campaign Finance and Public Disclosure Board notified the Green Party that the loss of minor political party status meant it was now a "political committee," [2] that certain contribution restrictions now applied, and that public subsidy payments would be discontinued. Shortly thereafter, the Green Party contacted the Secretary of State's office to determine what could be done to restore minor political party status. Eventually, the Secretary of State suggested that the Green Party consider either filing a petition under Section 204B.44 or pursuing legislative action that would clarify what the Green Party perceived to be ambiguities in the statutes governing political party status.

On June 6, 2013, the Green Party filed its petition with our court, alleging that Secretary Ritchie committed "an omission, error or wrongful act" in "de-certify[ing] the [Green Party] ... and caus[ing] the party to lose its ability to receive the public subsidy payments, to participate in the state [political contribution refund] program, and to be included on the Minnesota tax forms." The Green Party alleges that it is "in compliance with the spirit of the law, because no one will be harmed by such a resolution, because it acted in good faith and in reliance upon communications from the Secretary of State's office, and because democracy and fair elections will be served by such a resolution." The Green Party asks us to resolve any ambiguities in Minn.Stat. § 200.02, subd. 23, and to order the Secretary of State to certify it as a minor political party as of

---

**2.** *See* Minn.Stat. § 10A.01, subd. 27 (2012) (defining a "political committee" as "an association whose major purpose is to influence the nomination or election of a candidate or to promote or defeat a ballot question" and that is not a "principal campaign committee or a political party unit").

January 1, 2013.[3] On June 7, 2013, we issued an order directing the parties to file memoranda addressing the issues of jurisdiction and laches.

The Green Party's challenge to the loss of its minor political party status seeks to invoke this court's jurisdiction under Minn.Stat. § 204B.44, which authorizes proceedings that seek to correct "errors, omissions, or wrongful acts," particularly with respect to election ballots. The "principal purpose" of this statutory remedy "is to provide a mechanism for correcting errors alleged to have occurred before the election, such as ... in preparing or printing the official ballot." *Coleman v. Ritchie*, 762 N.W.2d 218, 231 n. 13 (Minn. 2009). The Green Party asserts that its challenge is properly brought under Minn. Stat. § 204B.44 because the impact of the Secretary of State's actions on the Green Party's political party status, on Minnesota's campaign financing laws, and on the distribution of public subsidy funds has statewide significance that is intended to be addressed by section 204B.44. We disagree.

We recently held that section 204B.44 "is not a broad vehicle through which any conduct with any relationship to an election, however tangential, can be challenged." *Carlson v. Ritchie*, 830 N.W.2d 887, 894 (Minn.2013). While paragraph (d) of section 204B.44 refers broadly to "any wrongful act, omission, or error" by the Secretary of State, the final clause of the paragraph limits our jurisdiction to claims relating to "any duty concerning an election." Minn.Stat. § 204B.44(d). The plain language of this provision does not embrace claims based on conduct that may only generally implicate elections. *See Minn. Majority v. Ritchie*, No. A09–0950, Order at 5 (Minn. filed July 22, 2009) (dismissing petition challenging Secretary's failure to maintain and distribute statewide voter registration lists, noting "[w]e do not understand section 204B.44(d) to authorize claims and establish original jurisdiction in this court for any and all disputes concerning official conduct that relates to or may affect elections in general. At a minimum, the plain language of the statute requires that the claim relate to a duty concerning a specific election."); *Clark v. Pawlenty*, 755 N.W.2d 293, 299 (Minn.2008) (dismissing the Governor from a 204B.44 petition challenging his appointment authority and noting that the statute "provides a remedial process only for correction of the ballot and directly related election procedures"; and because the Governor "is not responsible" for ballot preparation, he cannot implement any relief sought); *Schroeder v. Johnson*, 311 Minn. 144, 145–46, 252 N.W.2d 851, 852 (1976) (noting that the legislature intended to protect potential candidates from the errors of those charged with properly completing the procedural and mechanical duties attendant to the election process). In short, our precedent recognizes that section 204B.44 "provides a remedial process only for correction of the ballot and directly related election procedures." *Clark*, 755 N.W.2d at 299.

The Green Party concedes that this case is not about placement of names on the ballot. Nonetheless, relying on *Lundquist v. Leonard*, 652 N.W.2d 33 (Minn.2002) and *Page v. Carlson*, 488 N.W.2d 274

---

3. The Green Party named Attorney General Lori Swanson as a respondent because she is required to "appear for the state in all causes in the ... courts wherein the state is directly interested." Minn.Stat. § 8.01 (2012). The Attorney General's obligation to "appear for the state" does not necessarily require her appearance as a party, particularly when there are no separate allegations in the petition about any actions or omissions by either the State of Minnesota or the Attorney General.

(Minn.1992), the Green Party argues that claims of statewide significance related to elections are no different from challenges to the form of the ballot to be used in an election, for which section 204B.44 provides a remedy. We reject this broad view of the statute.

In *Lundquist,* the jurisdictional dispute was whether the challenge to the ballot for a legislative district election should be filed in district court or in the supreme court. 652 N.W.2d at 35. We concluded that section 204B.44 conferred jurisdiction on our court "based on the nature of the office at issue." *Id.* at 36 (emphasis omitted). In *Page,* in holding that jurisdiction under section 204B.44 was proper, we noted that "the public interest require[d] a speedy determination ... whether petitioner is entitled to have his name placed on the primary ballot." 488 N.W.2d at 278. Significantly, both cases involved challenges to the Secretary of State's duties in the context of a specific election or the ballot to be used at a specific election. Neither element is present here.

We recognize that the Green Party's change in status may result in financial consequences to the Party. And we acknowledge that campaign finance can be an issue of statewide importance, particularly for Minnesota taxpayers who subsidize these programs. But the essential basis for the Green Party's petition is an effort to restore its status in Minnesota for purposes of participating in publicly subsidized campaign finance programs. Because the Green Party's petition does not seek a ballot correction, and de-certification as a minor political party does not directly interfere with the Green Party's right to present candidates for office in future elections, we hold that we do not

have jurisdiction under Minn.Stat. § 204B.44.[4]

Petition dismissed.

---

4. In dismissing this petition, we express no opinion on whether the Green Party can pursue relief in another forum for the loss of its minor political party status.