*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2133**

In the Matter of the Appeals of Kevin D. Moser, et al.,
for MSRS Correctional Plan Service

**Filed August 17, 2015
Affirmed
Johnson, Judge**

Minnesota State Retirement System

Philip G. Villaume, Jeffrey D. Schiek, Thomas H. Priebe, Villaume & Schiek, P.A., Bloomington, Minnesota (for relators)

Lori Swanson, Attorney General, Kevin Finnerty, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Johnson, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

The board of directors of the Minnesota State Retirement System determined that five employees of the department of corrections are ineligible for early-retirement benefits under the rule-of-90 formula because they became employees of the state after July 1, 1989. On appeal, the employees argue that they are eligible because they started a training program before July 1, 1989. We conclude that the board's decision is supported by substantial evidence that, while in the training program, the employees were not

performing the duties of the position for which they were being trained and, thus, were not state employees during that period of time for purposes of pension eligibility. Therefore, we affirm.

## FACTS

The five relators in this appeal joined the department of corrections (DOC) on June 7, 1989, as trainees for the position of corrections counselor (now called corrections officer). The DOC intended the training program to be a means of teaching trainees to be corrections counselors and a means of selecting the trainees most suitable for the position. The training program lasted at least four weeks and as long as nine weeks, depending on the facility to which a trainee was assigned. According to the DOC, a significant number of trainees were not selected to be corrections counselors.

The legislature amended the statute governing the Minnesota State Retirement System (MSRS) in 1989 to provide that "a person who first became a covered employee before July 1, 1989" is entitled to early-retirement benefits pursuant to the so-called "rule of 90." 1989 Minn. Laws ch. 319, art. 13, § 10, at 2078 (codified at Minn. Stat. § 352.116, subd. 1 (2014)). Under the rule of 90, a person attains eligibility when his or her "attained age plus credited allowable service totals 90 years." Minn. Stat. § 352.116, subd. 1(c) (2014).

Relators remain employed by the DOC and now are members of the MSRS general plan. Relators assert that they long have understood that they would be eligible for early-retirement benefits pursuant to the rule of 90 because, among other things, they started their training program before July 1, 1989. In addition, they contend that they

were so informed during the training program. When some of them contacted MSRS to inquire about or to confirm their eligibility for early-retirement benefits, they were told that they do not qualify for the rule of 90 because their benefit contributions did not begin until after July 1, 1989. Relators requested additional service credit from the MSRS. Their request was denied by the executive director of the MSRS in April 2013. The executive director explained that, according to the DOC, relators "were not performing their future duties" in July 1989 and, thus, were "not employees eligible for MSRS until . . . after completing [their] classroom training."

Relators pursued an administrative appeal of the executive director's decision to the MSRS board of directors in October 2014. *See* Minn. Stat. § 356.96 (2014). The board considered relator's appeal at a regular meeting. The board heard from the executive director and MSRS staff, relators' attorney, an assistant commissioner of DOC, and four of the relators. The board voted at the meeting to uphold the executive director's determination, and the board issued a written order in December 2014. The board's order concludes that, in their training program, relators "were *learning how to perform* the duties of a corrections counselor, not *actually performing* those duties," and, thus, were not within the statutory definition of "state employee" during their training program. Relators appeal the MSRS board's decision by way of a writ of certiorari.

## D E C I S I O N

Relators argue that the MSRS board erred by concluding that they were not performing the duties of a corrections counselor during their training program in June

3

1989 and, thus, are ineligible for early-retirement benefits because the rule-of-90 formula does not apply.

This court reviews decisions of the MSRS board in the same manner that we review any other administrative agency decision. *Axelson v. Minneapolis Teachers' Retirement Fund Ass'n*, 544 N.W.2d 297, 299 (Minn. 1996); *In re Retirement Benefits of Yetka*, 554 N.W.2d 85, 88 (Minn. App. 1996). It is undisputed that the board's decision in this case is a quasi-judicial decision. Our review of quasi-judicial agency decisions

> is limited to an inspection of the record of the inferior tribunal in which the court is necessarily confined to questions affecting the jurisdiction of the board, the regularity of its proceedings, and, as to merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it.

*Dietz v. Dodge Cnty.*, 487 N.W.2d 237, 239 (Minn. 1992). We defer to an agency's factual findings so long as they pass the substantial-evidence test, *i.e.*, so long as there is "adequate support in the record" to justify the decision. *In re Denial of Eller Media Co.'s Applications for Outdoor Adver. Device Permits in City of Mounds View*, 664 N.W.2d 1, 7 (Minn. 2003); *see also Moorhead v. Minnesota Pub. Utils. Comm'n*, 343 N.W.2d 843, 846 (Minn. 1984). "The substantial evidence test is satisfied when there is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Eller Media*, 664 N.W.2d at 7 (quotation omitted).

An employee of the state who was a "covered employee or a member of a [specified] pension fund" before July 1, 1989, may be eligible for early-retirement benefits pursuant to the rule of 90. Minn. Stat. § 352.116, subd. 1. The term "state

4

employee" is defined by statute to include "trainees who are employed on a full-time established training program performing the duties of the classified position for which they will be eligible to receive immediate appointment at the completion of the training period." Minn. Stat. § 352.01, subd. 2a(a)(8) (2014). But the statutory definition of "state employee" excludes "persons who are . . . employed as trainee employees unless included under subdivision 2a, paragraph (a), clause (8)." *Id.*, subd. 2b(1)(iii). It is undisputed that relators were engaged in "a full-time established training program" before July 1, 1989. *See* Minn. Stat. § 352.01, subd. 2a(a)(8). The key question is whether they were "performing the duties of the classified position for which they will be eligible to receive immediate appointment at the completion of the training period," *i.e.*, the position of corrections counselor. *See id.*

The MSRS board concluded that, based on the evidence presented, relators were "not *actually performing* the duties" of corrections counselors during their training program but, rather, were "*learning how to perform* the duties of a corrections counselor." The board based this conclusion on its findings that relators "spent considerable time in the classroom and touring facilities," "performed tasks under the direct supervision of experienced officers," and were paid less than half the hourly wage of a probationary corrections counselor.

The board's finding that relators often were in a classroom or on tours of correctional facilities is supported by documentary evidence in the form of daily and weekly agendas for the training program. These exhibits span the period of June 7, 1989, to August 15, 1989. There appears to be no dispute that the trainees were not

5

"performing the duties of the [corrections counselor] position" while they were in a classroom or on tours of correctional facilities. *See id.*

In addition, the board's finding that relators performed tasks under the direct supervision of experienced officers also is supported by the evidence in the agency record. A portion of the training program consisted of on-the-job training. But the evidence indicates that the trainees did not perform all the duties or fulfill all the expectations of a corrections counselor during the on-the-job portion of the training program. Rather, the evidence indicates that trainees were paired with corrections counselors. Relators contend that they performed many or all of the tasks that corrections counselors were required to perform. They put particular emphasis on letters submitted by persons who had responsibility for training at various DOC facilities. But those letters essentially confirm that, as trainees in the on-the-job component of the training program, relators were not fully responsible or accountable in the same way as corrections counselors. For example, the letters indicate that trainees were merely "shadowing and working side by side" with corrections counselors and were performing the tasks of corrections counselors "under the supervision and coaching of supervisors and experienced officers."

Furthermore, the board's finding that relators were paid less than half the hourly wage of probationary corrections counselors also is supported by evidence in the agency record. Trainees were paid only $4.31 per hour, and their payroll status was described with the code "trainee, intern, work study student appointment." Relators' hourly pay was increased to $10.25 after they were placed into probationary corrections counselor

positions, and their transitions were described with the code, "conversion from trainee to probationary status." Not until relators were appointed to the position of corrections counselor did the DOC begin making the employer's contributions to a MSRS pension plan. This evidence further bolsters the conclusion that relators were not performing the duties of their future employment during the training program.

"With respect to factual findings made by the agency in its judicial capacity, if the record contains substantial evidence supporting a factual finding, the agency's decision must be affirmed." *Moorhead*, 343 N.W.2d at 846. We conclude that the evidence described above, as well as other evidence in the evidentiary record, provides substantial support for the board's findings. We further conclude that those findings justify the board's conclusion that each of the relators did not become a "state employee" until after completing the training program, which occurred after July 1, 1989.

Relators also contend that the MSRS should be estopped from denying their eligibility for early-retirement benefits pursuant to the rule of 90 because the training instructors allegedly told them during the training program that they would qualify for the rule of 90. Assuming that a DOC trainer said so, the statement would be a mistake in light of the statute and the evidence discussed above. *See* Minn. Stat. § 352.01, subd. 2a(a)(8). Relators do not cite any caselaw to support their contention that a misstatement by a state government employee may bind the state government more than two decades later. A governmental entity is subject to estoppel only if (1) a government agent commits wrongful conduct, (2) the claimant reasonably relied on that conduct, (3) the claimant incurred unique expenditures, and (4) the "balance of the equities" favors

7

estoppel. *City of North Oaks v. Sarpal*, 797 N.W.2d 18, 25 (Minn. 2011). A governmental entity is not subject to estoppel if a government employee makes "a simple mistake" or if a government employee takes an unauthorized action. *Id.* at 25-26 & n.8. In this case, relators cannot show that a DOC training instructor was authorized to confer on relators a retirement benefit that is contrary to state statute or otherwise engaged in wrongful conduct. Thus, the MSRS is not estopped from denying that relators are ineligible for early-retirement benefits pursuant to the rule of 90.

In sum, the MSRS board did not err when it decided that relators are ineligible for early-retirement benefits pursuant to the rule of 90.

**Affirmed.**